**STATE v. FREDERICK**

[222 N.C. App. 576 (2012)]

STATE OF NORTH CAROLINA v. TORREY JERMAINE FREDERICK

No. COA12-76

(Filed 21 August 2012)

### 1. Constitutional Law—right to counsel—critical stage of proceeding—pretrial suppression hearing

In a prosecution for drug-related charges that arose from a traffic stop, defendant's pretrial hearing on a motion to suppress evidence was a critical stage in the proceedings against defendant and his Sixth Amendment right to counsel attached no later than the time of the hearing.

### 2. Constitutional Law—right to counsel—pro se representation—possible maximum punishment

The trial court erred by allowing defendant to proceed *pro se* at a critical stage (a pretrial suppression hearing) after telling him only that he could go to prison for a long, long time and that the law required an active prison sentence if defendant was convicted. This was not the specificity required by N.C.G.S. § 15A-1242(3).

Appeal by defendant from judgments entered 7 September 2011 by Judge Paul L. Jones in Sampson County Superior Court. Heard in the Court of Appeals 23 May 2012.

*Roy Cooper, Attorney General, by Joseph E. Elder, Assistant Attorney General, for the State.*

*Marilyn G. Ozer for the defendant.*

THIGPEN, Judge.

Defendant appeals from judgments entered convicting him of trafficking in cocaine, intentionally keeping or maintaining a vehicle for the purpose of keeping a controlled substance, and possession of a firearm by a felon. Defendant presents five issues on appeal: (I) whether the trial court erred by denying Defendant's motion to dismiss the charge of trafficking in cocaine; (II) whether the trial court erred by denying Defendant's motion to dismiss the charge of maintaining a vehicle; (III) whether the trial court erred by denying Defendant's request for discovery of SBI drug testing protocol and procedures; (IV) whether the trial court erred by summarily dismissing Defendant's *pro se* motion to suppress after Defendant had been improperly allowed to waive counsel; and (V) whether appointed

counsel provided ineffective assistance of counsel due to a conflict of interest in her representation of Defendant, for which she withdrew as counsel of record.

The evidence of record tends to show the following: Around midnight on 29 August 2010, Michael Wallace ("Wallace"), the driver of a GMC Sierra Z-71 pickup truck, and passengers Torrey Jermaine Frederick ("Defendant") and Natasha Smith ("Smith"), were stopped by police officers at a driver's license checkpoint in Clinton, North Carolina. The vehicle was registered to Alicia Washington, Defendant's fiancée. Defendant was in the front passenger seat, and Smith was in the middle of the back seat.

Sergeant Robbie King ("Sergeant King") discovered that Wallace had an expired license and instructed him to pull over to the shoulder of the road in front of the patrol cars. Wallace complied, got out of the vehicle, and proceeded to walk towards the officers, who then instructed him to return to the vehicle. Wallace again complied, returning to the vehicle, after which he backed the vehicle closer to the patrol cars. However, the officers observed that Wallace drove the truck in reverse in a manner that may have been calculated to obscure the officers' view of the passenger side of the vehicle. Sergeant King then walked to the passenger side of the vehicle and had a conversation with Defendant, who explained that he and Wallace were on their way to drop Smith off at home. Wallace, however, told Corporal Edgar Carter ("Corporal Carter") a different story.

The officers conferred with one another about Wallace. and Defendant's conflicting stories and became suspicious. The officers then asked Wallace for consent to search the vehicle. Wallace refused, insisting that the vehicle belonged to his boss. Corporal Carter went to his patrol car to get his K-9 dog. As soon as the K-9 dog got out of the patrol car, it signaled that drugs were near. Corporal Carter walked the K-9 dog from the front of the truck to the back, first on the driver side and then on the passenger side. As Corporal Carter came to the passenger door, the K-9 dog alerted and began to bark and scratch at the ground under the passenger side door. The officers ordered Wallace, Smith and Defendant out of the vehicle, searched the vehicle, and discovered drugs and paraphernalia near the driver's seat and in the back seat. A cigarette package containing a white rock substance was found under the driver's seat in the vehicle. The officers also found bullets in the glove box, and a measuring cup with powder residue, baking soda, butter knives with powder residue, a digital scale, a marijuana cigarette and Ziploc bags in the vehicle.

Corporal Carter, while walking the K-9 dog around the front of the vehicle, noticed a white brick lying on the side of the road which appeared to be cocaine. In the grass next to the white brick, Corporal Carter also found a handgun, a bag with residue, and a bag containing crack cocaine and marijuana. The bullets in the glove box of the truck matched the bullets in the handgun found in the grass. The officers also searched Defendant's person and found $1335.00 in cash in his pocket. Defendant was questioned by Detective Alpha Clowney. Defendant admitted to possession of the blunt and marijuana found in the grass near the brick of cocaine, but Defendant recanted these admissions during the same interview.

Prior to trial, the substance contained in the white brick found at the scene was tested by Nicole Manley, a forensic scientist specializing in drug chemistry with the North Carolina State Crime Lab. Ms. Manley conducted preliminary and confirmatory tests on the substance and determined that it was cocaine hydrochloride. The brick was also marked with a "Z." Corporal Carter testified that in his experience, the marking indicated that the brick came from the Mexican drug cartel, Zeta. Corporal Carter also testified that a brick of cocaine that size had an estimated street value of "a minimum of $40,000."

On 12 January 2011, Defendant was indicted on the following seven charges in three indictments: the first indictment, 10 CRS 52051, included one count of trafficking in cocaine, one count of possession with the intent to manufacture, sell and deliver a schedule II controlled substance, and one count of maintaining a vehicle to keep controlled substances; the second indictment, 10 CRS 52053, included one count of possession with the intent to sell and deliver a schedule VI controlled substance, one count of possession of a stolen firearm, and one count of possession of drug paraphernalia; and the third indictment, 10 CRS 52054, was for one count of possession of a firearm by a convicted felon. Defendant was also indicted on the charge of having attained the status of an habitual felon.

Defendant signed two waivers of appointed counsel. On 21 June 2011, Defendant filed a *pro se* motion to suppress the evidence arising out of the driver's license checkpoint stop. This motion was heard, along with a number of additional *pro se* motions, at a 25 July 2011 hearing, where Defendant argued his motions without the representation of counsel. Defendant's motion to suppress was denied.

The trial was held during the 6 September 2011 session of the Sampson County Superior Court, the Honorable Paul L. Jones presid-

**STATE v. FREDERICK**

[222 N.C. App. 576 (2012)]

ing. Defendant proceeded at trial *pro se*. Wallace was a witness for the State, after having entered into a plea agreement pursuant to which the charges against him—possession of cocaine and no operator's license—were reduced; Wallace pled to misdemeanor possession of drug paraphernalia and no operator's license. At trial, Wallace testified that he did carpentry work for Defendant, that he frequently drove Defendant in the GMC pickup truck because Defendant did not have a driver's license, and finally, that earlier that evening, he dropped Defendant and Smith off at a local motel, went to Wal-Mart and smoked drugs in the vehicle while he waited for them. Defendant re-called Wallace after the State rested. During the defense's case, Wallace testified that he had not seen Defendant use drugs and had never known Defendant to sell drugs.

On 7 September 2011, after the presentation of the State's evidence, the court dismissed one count from the indictment, 10 CRS 52053—possession of a schedule VI controlled substance. After closing arguments, the court dismissed the remaining two counts of 10 CRS 52053, possession of a stolen firearm and possession of drug paraphernalia. Later that same day, the jury found Defendant guilty on all remaining counts.

The trial court entered judgments convicting Defendant of trafficking cocaine, keeping or maintaining a vehicle for the purpose of keeping a controlled substance, and possession of a firearm by a felon. After concluding Defendant was a record level IV offender, the trial court sentenced Defendant to 175 to 219 months incarceration and a fine of $250,000.00 on the trafficking conviction; on the maintaining a vehicle for controlled substances conviction, the trial court sentenced Defendant to a term of 8 to 10 months incarceration to be served concurrently with the trafficking sentence; the court sentenced Defendant to a consecutive term of 15 to 18 months incarceration on the possession of a firearm by a felon conviction. The court arrested judgment on the second count of 10 CRS 52051: possession with intent to sell and deliver a schedule II controlled substance. Defendant gave notice of appeal in open court on 7 September 2011.

I: Critical Stage—N.C. Gen. Stat. § 15A-1242 (2011)

**[1]** Defendant contends the trial court failed to adequately advise him of the range of permissible punishments as required by N.C. Gen. Stat. § 15A-1242(3) before allowing him to waive his right to appointed counsel and proceed *pro se* during a critical stage of the criminal process—the hearing on Defendant's motion to suppress. We

believe the hearing on Defendant's motion to suppress was a "critical stage[,]" prior to which the trial court allowed Defendant to waive his right to appointed counsel without making a proper inquiry as mandated by N.C. Gen. Stat. § 15A-1242.

"It is well settled that an accused is entitled to the assistance of counsel at every critical stage of the criminal process as constitutionally required under the Sixth and Fourteenth Amendments to the United States Constitution." *State v. Taylor*, 354 N.C. 28, 35, 550 S.E.2d 141, 147 (2001), *cert. denied*, 535 U.S. 934, 122 S. Ct. 1312, 152 L. Ed. 2d 221 (2002). "[A] defendant's right to counsel under the Sixth and Fourteenth Amendments attaches only at such time as adversary judicial proceedings have been instituted whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Id.* (citation and quotation omitted); *see State v. Detter*, 298 N.C. 604, 619, 260 S.E.2d 567, 579 (1979) (stating, "the right to counsel attaches and applies not only at trial but also at and after any pretrial proceeding that is determined to constitute a critical stage in the proceedings against the defendant"). "Whether a critical stage has been reached depends upon an analysis of whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Detter*, 298 N.C. at 620, 260 S.E.2d at 579 (citation omitted). A hearing on a motion to suppress has been deemed a critical stage. *See State v. Gordon*, 79 N.C. App. 623, 626, 339 S.E.2d 836, 838 (1986) (stating "[t]he suppression hearing was the critical stage for developing any weaknesses in the State's evidence").

Defendant made his first appearance in this case on 30 August 2010, at which time Defendant was informed that he was to remain in custody pending the posting of an appearance bond in the amount of $207,000.00. A preliminary hearing was set for 3 September 2010. The record shows that on 10 December 2010, Defendant signed a waiver of counsel, and on 15 December 2010, the trial court granted appointed counsel's motion to withdraw. Defendant was indicted on the charges in this case on 12 January 2011. The record also shows Defendant signed a second waiver of counsel on 24 January 2011.

On 21 June 2011, Defendant filed a *pro se* motion to suppress the evidence arising out of the driver's license checkpoint stop, which was titled, "MOTION TO SUPPRESS CALENDAR & DOCKET FOR HEARING[.]" The words, "evidence as fruits of unconstitutional seizure," were scribbled next to "MOTION TO SUPPRESS." This motion was heard, along with a number of additional *pro se* motions, at a 25

July 2011 hearing—almost seven months after Defendant was indicted. At the hearing, Defendant's motion to suppress was summarily denied:

> THE COURT: Okay. Motion to suppress calendar document for hearing is denied.
>
> THE DEFENDANT: I want to appeal that.
>
> THE COURT: Okay. You're getting your day in court and you ain't doing very well.

Defendant asserts on appeal that the "pre-trial judicial review of the Motion to Suppress was the single most critical stage of [Defendant's] case." We agree that the hearing on the motion to suppress was a critical stage in the criminal proceedings against Defendant, and that Defendant's Sixth Amendment right to counsel had attached no later than the time of the hearing. *See State v. Gibbs*, 335 N.C. 1, 44, 436 S.E.2d 321, 345 (1993), *cert. denied*, 512 U.S. 1246, 114 S. Ct. 2767, 129 L. Ed. 2d 881 (1994) (stating, "[the] defendant's Sixth Amendment right to counsel attached during his first appearance on 4 June, when the State's position against him solidified as to the murder charges and counsel was appointed"); *see also Gordon*, 79 N.C. App. at 626, 339 S.E.2d at 838 (1986) (stating "[t]he suppression hearing was the critical stage for developing any weaknesses in the State's evidence, and without the assistance of counsel defendant was ill-equipped to perform that task[,]" holding that "the court erred in requiring defendant to proceed *pro se* at the suppression hearing without a clear indication that he desired to do so and without making the inquiries required by N.C. Gen. Stat. 15A-1242[,]" and granting the defendant a new trial).

We must now determine whether the trial court made a proper N.C. Gen. Stat. § 15A-1242 inquiry prior to the 25 July 2011 hearing on Defendant's motion to suppress.

**[2]** We review the question of whether the trial court complied with N.C. Gen. Stat. § 15A-1242 *de novo. See State v. Watlington*, ___ N.C. App. ___, ___, 716 S.E.2d 671, 675 (2011). "This Court has long recognized the state constitutional right of a criminal defendant to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes." *State v. Moore*, 362 N.C. 319, 321, 661 S.E.2d 722, 724 (2008) (citations and quotation omitted). "However, before allowing a defendant to waive in-court representation by counsel . . . the trial court must insure that constitutional and statutory standards are satisfied." *Id.* at 322, 661 S.E.2d at 724 (cita-

tion and quotation omitted). "In order to determine whether the waiver meets this constitutional standard, the trial court must conduct a thorough inquiry[,] [and] [t]his Court has held that N.C.G.S. § 15A-1242 satisfies any constitutional requirements by adequately setting forth the parameters of such inquiries." *State v. Fulp*, 355 N.C. 171, 175, 558 S.E.2d 156, 159 (2002) (citations and quotation omitted).

N.C. Gen. Stat. § 15A-1242(3), provides the following:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant . . . [c]omprehends the nature of the charges and proceedings and the range of permissible punishments.

*Id.* "The record must affirmatively show that the inquiry was made and that the defendant, by his answers, was literate, competent, understood the consequences of his waiver, and voluntarily exercised his own free will." *State v. Callahan*, 83 N.C. App. 323, 324, 350 S.E.2d 128, 129 (1986). In cases where "the record is silent as to what questions were asked of defendant and what his responses were," this Court has held, "[we] cannot presume that [the] defendant knowingly and intelligently waived his right to counsel[.]" *Id.* at 324-25, 350 S.E.2d at 129. A trial court's failure to conduct the inquiry entitles defendant to a new trial. *See State v. Seymore*, ____ N.C. App. ____, ____, 714 S.E.2d 499, 502 (2011).

In this case, Defendant contends that the trial court did not advise him of his possible maximum punishment, as required by N.C. Gen. Stat. § 15A-1242(3), prior to the hearing on Defendant's *pro se* motion to suppress. The transcripts filed with this Court show only two such discussions between Defendant and the trial court with regard to Defendant's range of permissible punishments prior to, or on the date of, the hearing.[1] First, at a hearing on 24 January 2011, the

---

1. The record also contains two waivers of counsel signed by Defendant on 10 December 2010 and 24 January 2011. However, "[t]he execution of a written waiver is no substitute for compliance by the trial court with the statute[;] [a] written waiver is something in addition to the requirements of N.C. Gen. Stat. § 15A-1242, not . . . an alternative to it." *State v. Evans*, 153 N.C. App. 313, 315, 569 S.E.2d 673, 675 (2002). (citations and quotation omitted). Moreover, it is possible that other hearings were held before the trial court, in which the trial court conducted an adequate N.C. Gen. Stat. § 15A-1242 inquiry; however, those proceedings were either not transcribed or the parties failed to file the transcripts with this Court as part of Defendant's appeal. *See Callahan*, 83 N.C. App. at 324-25, 350 S.E.2d at 129 (stating that in cases where "the record is silent as to what questions were asked of defendant and what his responses were," this Court has held, "[we] cannot presume that [the] defendant knowingly and intelligently waived his right to counsel").

trial court informed Defendant of the range of permissible punishments in the following way:

> Now I'm satisfied that you have graduated from high school, that you are—or you think you are very familiar with the elements of the crimes charged, and you understand it's a Class C felony, and that you can go to prison for a long, long time. And you just need to be aware of all of that.

Second, at the hearing on Defendant's motion to suppress on 25 July 2011, the trial court informed Defendant of the range of permissible punishments by stating the following: "Now do you understand if you're convicted of these offenses, the law requires you get a mandatory active prison sentence? Do you understand that?" Later at the 25 July 2011 hearing, the trial court stated the following, generally, about the sentencing of "a lot of people[,]" without particular reference to any sentence Defendant may have actually faced, were he convicted of the crimes for which he was charged:

> Okay. Well, sir, I'm required to tell you these things because a lot of people, after the fact, say well the judge shouldn't have let me represent myself and that's how I ended up getting life in prison, or the death penalty, or 20 or 30 years.

The question presented, therefore, is whether the trial court adequately advised Defendant of the range of permissible punishments as required by N.C. Gen. Stat. § 15A-1242(3), by telling Defendant either (1) "you can go to prison for a long, long time[,]" or (2) "if you're convicted of these offenses, the law requires you get a mandatory active prison sentence[.]"[2] We believe the foregoing is inadequate to constitute the "thorough inquiry" envisioned by N.C. Gen. Stat. § 15A-1242(3), meant to "satisf[y]" the trial court "that the defendant . . . [c]omprehends . . . the range of permissible punishments." Quite simply, both "a long, long time" in prison and "[an] active prison sentence" lack the appropriate specificity we believe is required by N.C. Gen. Stat. § 15A-1242(3). *See Watlington*, ____ N.C. App. at ____, 716 S.E.2d at 675 (stating, "the trial court must make a *thorough inquiry* into whether the defendant's waiver was knowingly, intelligently and voluntarily made") (citation omitted) (emphasis added); *see also State v. Taylor*, 187 N.C. App. 291, 294, 652 S.E.2d 741, 743 (2007) (holding, "the trial court failed to properly inform defendant

---

2. The trial court's third statement, regarding the sentences of "a lot of people[,]" has no bearing on the question in this case, as the sentences referenced did not reflect the "range of permissible punishments" Defendant faced.

regarding 'the range of permissible punishments' that he faced[,]" because "[w]hile the trial court correctly informed defendant of the maximum 60-day imprisonment penalty for a Class 2 misdemeanor, . . . it failed to inform defendant that he also faced a maximum $1,000.00 fine for each of the charges") (citing N.C. Gen. Stat. § 15A-1242(3)); *compare State v. Whitfield,* 170 N.C. App. 618, 621, 613 S.E.2d 289, 291 (holding the trial court made an appropriate inquiry pursuant to N.C. Gen. Stat. § 15A-1242(3) as to the defendant's comprehension of the possible sentence she faced by "ma[king] sure that [the] defendant understood that her probation could be revoked, that her sentences could be activated, and that she could serve eleven to fifteen months in prison").

We reiterate, in part, the advice our Supreme Court gave to judges in *Moore,* 362 N.C. at 327-28, 661 S.E.2d at 727:

Although not determinative in our decision, we take this opportunity to provide additional guidance to the trial courts of this State in their efforts to comply with the "thorough inquiry" mandated by N.C.G.S. § 15A-1242. . . .

12. Do you understand that you are charged with ____, and that if you are convicted of this (these) charge(s), you could be imprisoned for a maximum of ____ and that the minimum sentence is ____? (Add fine or restitution if necessary.) . . .

*See* 1 Super. Court Subcomm., Bench Book Comm. & N.C. Conf. of Super. Court Judges, *North Carolina Trial Judge's Bench Book* § II, ch. 6, at 12-13 (Inst. of Gov't, Chapel Hill, N.C., 3d ed. 1999) (italics omitted). While these specific questions are in no way required to satisfy the statute, they do illustrate the sort of "thorough inquiry" envisioned by the General Assembly when this statute was enacted and could provide useful guidance for trial courts when discharging their responsibilities under N.C.G.S. § 15A-1242.

*Id.*

It is prejudicial error[3] to allow a criminal defendant to proceed *pro se* at any critical stage of criminal proceedings without making the inquiry required by N.C. Gen. Stat. § 15A-1242, *See Seymore,* ____

---

3. "[S]ome constitutional rights, like the right to counsel, are so basic to a fair trial that their infraction can never be treated as harmless error." *State v. Colson,* 186 N.C. App. 281, 650 S.E.2d 656 (citation and quotation omitted), *disc. review denied,* 362 N.C. 89, 656 S.E.2d 280 (2007).

N.C. App. at ____, 714 S.E.2d at 502, and because neither "a long, long time" in prison nor "a mandatory active prison sentence" satisfy the requirements of N.C. Gen. Stat. § 15A-1242(3), we grant Defendant a new trial.[4]

NEW TRIAL.

Judges CALABRIA and STEPHENS concur.

───────────

4. Because Defendant will receive a new trial due to the trial court's failure to comply with N.C. Gen. Stat. § 15A-1242, we do not reach Defendant's remaining arguments on appeal.