**STATE v. REID**

[224 N.C. App. 181 (2012)]

STATE OF NORTH CAROLINA
v.
DANIEL JOSEPH REID

No. COA12-340

Filed 4 December 2012

**1. Constitutional Law—right to counsel—private counsel— appointed counsel**

The trial court did not err in a trafficking in cocaine by possession case by allegedly failing to advise defendant of his right to private counsel. The trial court informed defendant of his right to be represented by counsel, including appointed counsel. Additionally, the trial court made thorough inquiry into defend-ant's concerns with his appointed counsel and appointed counsel's preparedness for trial. After this inquiry, the trial court appropriately determined appointed counsel was "reasonably competent" to represent defendant.

**2. Criminal Law—jury instruction—entrapment**

The trial court did not err in a trafficking in cocaine by possession case by failing to instruct the jury concerning entrapment. The entrapment defense was not a material aspect of the case because defendant pointed to no credible evidence that: (1) he would not have committed the crime except for law enforcement's persuasion, trickery or fraud, or (2) that the crime was the creative production of law enforcement authorities.

**3. Appeal and Error—preservation of issues—no plain error review—not instructional or evidentiary error**

Although defendant contended the trial court erred in a trafficking in cocaine by possession case by denying defendant's motion for disclosure of information about the confidential informants, this argument was not preserved at trial. Since it did not involve instructional or evidentiary error, it was not reviewed for plain error on appeal.

**4. Search and Seizure—denial of motion to suppress—cocaine— warrantless stop and frisk—probable cause—plain feel doctrine**

The trial court did not commit plain error in a trafficking in cocaine by possession case by denying defendant's motion to sup-

press cocaine. An officer had reasonable suspicion to conduct a warrantless stop and frisk of defendant after he received information from two reliable informants who provided information about defendant's criminal activity, location, and appearance. Further, the officer's search of defendant created probable cause for seizure of the cocaine under the "plain feel" doctrine.

Appeal by Defendant from judgment entered 28 January 2011 by Judge Shannon R. Joseph in Wake County Superior Court. Heard in the Court of Appeals 13 September 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General Lars F. Nance, for the State.*

*William D. Spence, for Defendant-appellant.*

HUNTER, JR., Robert, N., Judge.

Daniel Joseph Reid ("Defendant") appeals from a judgment entered after a jury convicted him of trafficking in cocaine by possession pursuant to N.C. Gen. Stat. § 90-95(h)(3)(a) (2011). Defendant contends the trial court erred by (1) failing to advise him of his right to hire a private attorney; (2) denying his request for a jury instruction concerning entrapment; (3) failing to disclose the names of the confidential informants involved in the investigation and their communications with law enforcement officials; and (4) denying his motion to suppress evidence. Upon review, we find no error.

## I. Facts & Procedural History

On 19 July 2010, Detective Pete McKeon ("McKeon"), a Raleigh Police detective, received a phone call from "Jim," a confidential informant who had in the past provided McKeon with reliable information leading to several drug arrests ("Jim" is a pseudonym used for reading clarity). Jim told McKeon that Defendant was obtaining cocaine in Winston-Salem and Greensboro and "purchasing large amounts of cocaine" to bring to the Raleigh area. Jim also gave McKeon Defendant's address in Raleigh and told him Defendant drove a white Ford pick-up truck. Following this tip, McKeon began surveillance of Defendant's residence. McKeon also searched DMV records. This search revealed a Ford pick-up truck was registered in Defendant's name. Over the next several weeks, McKeon observed Defendant at his residence. He also observed Defendant's pick-up truck in the driveway.

On 6 August 2010, McKeon received a phone call from "Ned," a second informant who had also provided McKeon with reliable information in the past ("Ned" is a pseudonym used for reading clarity). Ned corroborated Jim's information.

McKeon and Jim planned a fictitious drug deal during which Defendant would use Jim's vehicle to obtain cocaine in Winston-Salem, meet at Jim's hotel room in Durham, and then return to Raleigh with Jim to sell one ounce of cocaine to Jim's friend. McKeon testified he planned to arrest Defendant with the cocaine prior to sale. McKeon asked Jim's permission to place a GPS unit on Jim's vehicle, and Jim consented.

Around noon on 9 August 2010, Jim called McKeon and told him Defendant was on his way to Jim's Durham hotel room. Two hours later, Jim told McKeon that Defendant was now on his way to Winston-Salem in Jim's vehicle. McKeon tracked Defendant's trip to Winston-Salem via GPS. As planned, Defendant obtained cocaine in Winston-Salem and returned to Jim's hotel room, where he showed Jim the cocaine.

However, Defendant suddenly decided to abandon the pre-arranged drug sale. Instead, he drove his pick-up truck to a friend's apartment at 1301 Durlain Drive in Raleigh. Jim followed Defendant and gave the address to McKeon. He also told McKeon that Defendant's pick-up truck was parked on the side of the apartment building.

Detective McKeon, Sergeant Core ("Core"), and Detective E. Gibney ("Gibney") drove to 1301 Durlain Drive without a search warrant. As Jim predicted, they saw Defendant's white Ford pickup truck parked at the side of the building. The officers waited, watching the truck. Twenty to thirty minutes after their arrival, Defendant exited the building and walked toward his truck. Once Defendant opened the truck's door, McKeon, Core, and Gibney identified themselves as police officers and approached Defendant. Gibney detained Defendant and immediately smelled a very strong odor of marijuana. McKeon then began to frisk Defendant for weapons.

During the search, McKeon felt a "large bulge" in Defendant's pocket. He testified that given his "training and experience," he "knew exactly what it was once [he] felt it." He said "[i]t was packaged like narcotics would be packaged." He removed a white plastic grocery bag that contained two smaller plastic bags. The smaller bags were vacuum-sealed, which Gibney testified is a common technique

in the drug trade to mask the smell of drugs from police dogs. Gibney photographed the bag and placed it inside an evidence folder. McKeon then arrested Defendant for possession of cocaine and took him to the police station.

At the police station, Gibney and Detective Patchin packaged the evidence. The Raleigh Police Department then delivered the sealed package to the Wake County City-County Bureau of Identification (CCBI) laboratory. Irvin Lee Allcox, a forensic drug chemist with the CCBI, determined one of the bags contained 49.9 grams of cocaine and the other contained 32.5 grams of cocaine.

On 27 September 2010, Defendant was indicted for trafficking in cocaine by possession of 28 grams or more but less than 200 grams. N.C. Gen. Stat. § 90-95(h)(3)(a) (2011). Defendant was declared indigent and received court-appointed counsel. On 23 November 2010, Defendant filed motions to suppress the cocaine and to reveal the identity of the confidential informants. The trial court denied both of Defendant's motions on 21 January 2011.

Defendant was tried during the 27 January 2011 Criminal Session of the Superior Court of Wake County. Before the jury was impaneled, Defendant told the court he disapproved of his appointed counsel's trial strategy. The court inquired into these concerns:

> [THE COURT:] Mr. Reid, you understand that you have a right to counsel. You've been found indigent. [Appointed counsel] has been appointed to represent you. What is going on now?
>
> THE DEFENDANT: Well, you know, the motion hearing was a disaster. Unfortunately, [appointed counsel] didn't even bother to come talk to me about what our strategy was or anything like that.
>
> . . . .
>
> THE COURT: . . . [A]s you know, indigent defendants do not have the right to select their lawyer. I do understand that you are dissatisfied with the ruling.
>
> . . .
>
> THE COURT: Are there any other issues that you want to bring to my attention that you feel like are reasons [appointed counsel] cannot represent you?

THE DEFENDANT: Well, you know, he wants to move forward with no witnesses on my behalf, you know, no documentation, nothing, okay?

. . . .

THE COURT: Let me understand. Where we are is, you are unhappy with what [appointed counsel] has done so far?

THE DEFENDANT: Uh-huh.

THE COURT: And let me tell you where we're going to go from here. I'm going to talk to him and I'm going to decide whether we've got any issue that would cause me to appoint new counsel, if you want new counsel. If we don't—that is, if I don't find there's a conflict of interest or ineffective assistance of counsel, there are often disagreements between defendant and lawyer, and that doesn't—if I don't find a reason to substitute a new lawyer, then you'll be faced with a choice whether to proceed with [appointed counsel] or to proceed without a lawyer, okay?

THE DEFENDANT: Yes, Your Honor.

. . . .

THE COURT: Is there anything else we should talk about before I talk to [appointed counsel]?

THE DEFENDANT: I think that pretty much summed up that I'm unhappy with his services, didn't do any investigation at all, zero investigation was done.

. . . .

THE COURT: . . . I'm going to talk to [appointed counsel] and decide whether we've got any issue that would cause me to appoint new counsel. . . . if I don't find a reason to substitute a new lawyer, then you'll be faced with a choice whether to proceed with [appointed counsel] or to proceed without a lawyer.

The trial court then asked appointed counsel about his communications with Defendant and his preparation for the case. Appointed counsel responded he had met with Defendant, gave him copies of discovery materials and relevant case law, and discussed trial strat-

egy with him. Appointed counsel then stated he was prepared to go to trial. The court ruled appointed counsel was reasonably competent to present the case.

Defendant then moved to proceed *pro se.* The trial court engaged in the following colloquy:

> THE COURT: Okay. I need to ask you some questions. You understand that you have the right to a lawyer?
>
> [DEFENDANT]: Yes, Your Honor.
>
> THE COURT: And that your lawyer is [appointed counsel]?
>
> [DEFENDANT]: At this point, yes, Your Honor.
>
> THE COURT: Okay. You understand that this case is going to trial today?
>
> [DEFENDANT]: Yes, Your Honor.
>
> THE COURT: All right. Based on our colloquy this far, it's clear that you can hear and understand me.
>
> [DEFENDANT]: Yes.
>
> THE COURT: Are you under the influence – have you been taking any narcotics, pills?
>
> [DEFENDANT]: I'm on prescription for my back, muscle relaxers and painkillers.
>
> . . . .
>
> THE COURT: How does it affect your thinking?
>
> [DEFENDANT]: I don't think it has any bearing.
>
> THE COURT: It does not. How old are you?
>
> [DEFENDANT]: I am 41 years old.
>
> THE COURT: What level of education did you finish?
>
> [DEFENDANT]: High school.
>
> THE COURT: You finished high school?
>
> [DEFENDANT]: Uh-huh.
>
> THE COURT: You know how to read and write?

**STATE v. REID**

[224 N.C. App. 181 (2012)]

[DEFENDANT]: Yes.

THE COURT: Do you have any physical or mental handicaps?

[DEFENDANT]: No.

THE COURT: And, as we discussed, you have the right to be represented by a lawyer. And if you can't afford one, one's been appointed for you. You know, if you elect to forgo representation, you have to follow the same rules of evidence and procedure that a lawyer in this court must follow.

[DEFENDANT]: Yes, ma'am.

THE COURT: You understand that the Court -- no one in this Court can give you legal advice concerning jury instructions or any other legal issues that would be raised at trial; you are on your own as if you did not have a lawyer?

[DEFENDANT]: Yes, I understand.

THE COURT: I won't be able to offer legal advice. If you ask me any question, I would treat you the same as I would treat a lawyer.

[DEFENDANT]: That's fine, Your Honor.

THE COURT: Do you understand that?

[DEFENDANT]: Yes, I understand that, Your Honor.

THE COURT: All right. So you are charged with trafficking cocaine; is that correct?

[DEFENDANT]: That's correct, Your Honor.

. . . .

THE COURT: Do you have any questions about anything that I have said to you?

[DEFENDANT]: Not at this point, Your Honor.

THE COURT: Okay. Do you now waive your right to the assistance of a lawyer and voluntarily and intelligently decide to represent yourself in this case in which you face a minimum of 35 months, maximum 42 [months], and not less than a $50,000 fine?

[DEFENDANT]:  Yes, Your Honor.

THE COURT:  As I said at the beginning of this hearing, we're outside the presence of the jury, and I find that the defendant has knowingly, intelligently, and voluntarily waived any right to a lawyer.

The court presented Defendant with a waiver of counsel form and Defendant signed it. Defendant then pled not guilty.

On 28 January 2011, the jury found Defendant guilty of trafficking in cocaine. The judge sentenced Defendant to a minimum prison term of 35 months and a maximum term of 42 months. Defendant gave timely notice of appeal on 28 January 2011.

## II.  Jurisdiction & Standard of Review

This Court has jurisdiction to hear the instant case under N.C. Gen. Stat. § 7A-27(b) (2011) and § 15A-1444(a) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

Defendant's arguments regarding (1) the adequacy of the advice to Defendant concerning his right to counsel, and (2) denial of a jury instruction on entrapment, involve questions of law. We review questions of law *de novo*. *State v. Harris*, 198 N.C. App. 371, 377, 679 S.E.2d 464, 468 (2009). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

Defendant's argument regarding (3) the denial of his motion to disclose the informants' identities was not preserved at trial. Since it does not involve instructional or evidentiary error, it will not be reviewed for plain error on appeal. *See State v. Lawrence*, ___ N.C. ___, ___, 723 S.E.2d 326, 333 (2012) ("[P]lain error review in North Carolina is normally limited to instructional and evidentiary error.").

Defendant's argument regarding (4) the denial of his motion to suppress also was not preserved at trial. Since it involves evidentiary error, we review for plain error. *See id.*

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant

must establish prejudice that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*Id.* at ___, 723 S.E.2d at 334 (internal citations and quotation marks omitted).

### III. Analysis

On appeal, Defendant makes four arguments: (1) the trial court erred in failing to advise him of his right to hire a private attorney; (2) the trial court erred in denying his request for a jury instruction concerning entrapment; (3) the trial court erred in denying his motion for disclosure of the names of the confidential informants and the substance of their communications with law enforcement; and (4) the trial court erred in denying his motion to suppress evidence gathered from a warrantless search and seizure.

### A. Advice Concerning Right to Hire Counsel

[1] Defendant argues he did not make a knowing and intelligent waiver of counsel under N.C. Gen. Stat. § 15A-1242 (2011) because the trial court did not inform him of his right to hire a private attorney. We disagree.

"This court has long recognized the state constitutional right of a criminal defendant to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes." *State v. Frederick,* ___ N.C. App. ___, ___, 730 S.E.2d 275, 279 (2012) (citation and quotation marks omitted). "However, before allowing a defendant to waive in-court representation by counsel the trial court must insure that constitutional and statutory standards are satisfied." *Id.* (citation and quotation marks omitted).

"It is prejudicial error to allow a criminal defendant to proceed *pro se* at any critical stage of criminal proceeding without making the inquiry required by N.C. Gen. Stat. 15A-1242." *Id.* at ___, 730 S.E.2d at 281.

Under N.C. Gen. Stat. § 15A-1242, the trial court must engage in a "thorough" waiver inquiry to determine the defendant:

(1) [h]as been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

(2) [u]nderstands and appreciates the consequences of this decision; and

(3) [c]omprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C. Gen. Stat. § 15A-1242 (2011). Defendant's waiver of counsel must be "knowing and voluntary, and the record must show that the defendant was literate and competent, that he understood the consequences of his waiver, and that, in waiving his right, he was voluntarily exercising his own free will." *State v. Thacker*, 301 N.C. 348, 354, 271 S.E.2d 252, 256 (1980).

"When a defendant executes a written waiver which is in turn certified by the trial court, the waiver of counsel will be presumed to have been knowing, intelligent, and voluntary, unless the rest of the record indicates otherwise." *State v. Warren*, 82 N.C. App. 84, 89, 345 S.E.2d 437, 441 (1986).

Our Supreme Court has offered a fourteen-question checklist "designed to satisfy requirements of N.C.G.S. § 15A-1242:"

1. Are you able to hear and understand me?

2. Are you now under the influence of any alcoholic beverages, drugs, narcotics, or other pills?

3. How old are you?

4. Have you completed high school? college? If not, what is the last grade you completed?

5. Do you know to read? write?

6. Do you suffer from any mental.handicap? physical handicap?

7. Do you understand that you have the right to be represented by a lawyer?

8. Do you understand that you may request that a lawyer be appointed for you if you are unable to hire a lawyer; and one will be appointed if you cannot afford to pay for one?

9. Do you understand that, if you decide to represent yourself, you must follow the same rules of evidence and procedure that a lawyer appearing in this court must follow?

10. Do you understand that, if you decide to represent yourself, the court will not give you legal advice concerning defenses, jury instructions or other legal issues that may be raised in the trial?

11. Do you understand that I must act as an impartial judge in this case, that I will not be able to offer you legal advice, and that I must treat you just as I would treat a lawyer?

12. Do you understand that you are charged with _____, and that if you are convicted of this (these) charge(s), you could be imprisoned for a maximum of _____ and that the minimum sentence is _____? (Add fine or restitution if necessary.)

13. With all of these things in mind, do you now wish to ask me any questions about what I have just said to you?

14. Do you now waive your right to assistance of a lawyer, and voluntarily and intelligently decide to represent yourself in this case?

*State v. Moore*, 362 N.C. 319, 327–28, 661 S.E.2d 722, 727 (2008) (citing 1 Super. Court Subcomm., Bench Book Comm. & N.C. Conf. of Super. Court Judges, *North Carolina Trial Judge's Bench Book* § II, ch. 6, at 12-13 (Inst. of Gov't, Chapel Hill, N.C., 3d ed. 1999)).

In the present case, because Defendant signed a written waiver, a presumption arises that his waiver is "knowing, intelligent, and voluntary." *See Warren*, 82 N.C. App. at 89, 345 S.E.2d at 441. The transcript previously quoted further illustrates the court examined Defendant on each of the issues mentioned in N.C. Gen. Stat. § 15A-1242. In fact, the trial court scrupulously adhered to the fourteen-question checklist provided in *Moore*, 362 N.C. at 327–28, 661 S.E.2d at 727. Although Defendant refused to let appointed counsel represent him even after extensive questioning, the trial court still asked appointed counsel to remain in court as stand-by counsel in case Defendant subsequently changed his mind.

In addition, "[i]n the absence of any substantial reason for the appointment of replacement counsel, an indigent defendant must accept counsel appointed by the court, unless he wishes to present his own defense." *State v. Hutchins*, 303 N.C. 321, 335, 279 S.E.2d 788, 797 (1981) (internal citations and quotation marks omitted). As the trial transcript indicates, the trial court questioned appointed counsel and determined there was no "substantial reason" to replace him because he was "reasonably competent" to represent Defendant.

Defendant relies primarily on *State v. Jones*, No. COA 11–287, 2012 WL 121229 (N.C. Ct. App. Jan. 17, 2012), to argue the trial court should have informed him of his right to *private* counsel. Because *Jones* is an unpublished opinion under North Carolina Rule of Appellate Procedure 30(e), it is only persuasive and not controlling authority. Nonetheless, we find *Jones* distinguishable from the present case.

In *Jones*, the criminal defendant moved to proceed *pro se. Id.* at *1. During the waiver inquiry, the trial court "failed to adequately inform Defendant of his right to retain *private* counsel." *Id.* at *4 (emphasis added). In reaching this conclusion, this Court focused on the fact that (i) the trial court failed to inform the defendant of his right to *any* counsel, including appointed counsel, and (ii) the trial court failed to "explore[] Defendant's claim that his court appointed attorney never met with him and was thus not prepared for trial." *Id.*

Unlike in *Jones*, here the trial court did inform Defendant of his right to be represented by counsel, including *appointed* counsel, using language quite similar to that approved in *Moore. See Moore*, 362 N.C. at 327–28, 661 S.E.2d at 727. Additionally, the trial court made thorough inquiry into Defendant's concerns with his appointed counsel and appointed counsel's preparedness for trial. After this inquiry, the trial court appropriately determined appointed counsel was "reasonably competent" to represent Defendant.

Consequently, we find the trial court did not err by failing to inform Defendant of his right to hire private counsel.

### B. Jury Instruction on Entrapment

[2] Defendant next argues the trial court erred in denying his request that the court use the pattern jury instruction on entrapment provided to him by the court. *See* N.C.P.I.-Crim. 309.10 (2011).

"Assignments of error challenging the trial court's decisions regarding jury instructions are reviewed *de novo*, by this Court." *State*

*v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). In North Carolina, "[w]here the trial court adequately instructs the jury as to the law on every material aspect of the case arising from the evidence and applies the law fairly to variant factual situations presented by the evidence, the charge is sufficient." *Murrow v. Daniels*, 321 N.C. 494, 497, 364 S.E.2d 392, 395 (1988). "Before a Trial Court can submit [the entrapment defense] to the jury there must be *some credible evidence* tending to support the defendant's contention that he was a victim of entrapment, as that term is known to the law." *State v. Burnette*, 242 N.C. 164, 173, 87 S.E.2d 191, 197 (1955) (emphasis added).

The entrapment defense consists of two elements: "(1) acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime, [and] (2) when the criminal design originated in the minds of the government officials, rather than with the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities." *State v. Walker*, 295 N.C. 510, 513, 246 S.E.2d 748, 750 (1978) (citing *Sherman v. United States*, 356 U.S. 369 (1958)). "It is well settled that the defense of entrapment is not available to a defendant who has a predisposition to commit the crime independent of governmental inducement and influence." *State v. Hageman*, 307 N.C. 1, 29, 296 S.E.2d 433, 449 (1982). "Predisposition may be shown by a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant an opportunity to commit the crime." *Id.* at 31, 296 S.E.2d at 450.

Here, the entrapment defense is not a "material aspect of the case" because Defendant can point to no "credible evidence" that (1) he would not have committed the crime except for law enforcement's persuasion, trickery or fraud, or (2) that the crime was the creative production of law enforcement authorities. *See Walker*, 295 N.C. at 513, 246 S.E.2d at 750.

First, Defendant has presented no evidence he would not have committed the crime but for the police's influence. *See State v. Martin*, 77 N.C. App. 61, 67, 334 S.E.2d 459, 462–63 (1985) (holding that when law enforcement simply "gave defendant the money and asked him to obtain the cocaine[,]" there was no evidence of "persuasion, trickery or fraud"); *State v. Rowe*, 33 N.C. App. 611, 614, 235 S.E.2d 873, 875 (1977) ("Merely asking defendant to sell drugs to her or telling him she was interested in buying some drugs did not con-

stitute an inducement to defendant to commit a crime he did not otherwise contemplate committing.").

Second, there is no evidence the "criminal design" to purchase cocaine originated with law enforcement. At trial, Defendant testified he "was spending money on coke like there was no tomorrow. [He] knew six coke dealers in [the] neighborhood, could get whatever [he] wanted." Also, Defendant was already moving large quantities of cocaine into the Raleigh area prior to the police investigation. Thus, Defendant was "predisposed" to commit the crime independent of government influence. *See Hageman*, 307 N.C. at 29, 296 S.E.2d at 449.

For these reasons, we conclude the trial court did not err in denying a jury instruction on entrapment.

### C. Identity of Confidential Informants

[3] Defendant next argues the trial court erred by denying his pretrial motion to disclose the names of the informants and their communications with law enforcement. Since Defendant did not preserve this issue at trial, he requests plain error review.

However, plain error review is not available because the decision to withhold the identities of confidential informants does not involve jury instructions or the admission of evidence. *See Lawrence*, ___ N.C. at ___, 723 S.E.2d at 333 (2012) ("[P]lain error review in North Carolina is normally limited to instructional and evidentiary error."); *see also State v. Miles*, ___ N.C. App. ___, ___, 727 S.E.2d 375, 378 (2012) (declining to address the defendant's argument that the trial court committed plain error by requiring him to wear a prison uniform during trial); *State v. Carpenter*, 147 N.C. App. 386, 396–97, 556 S.E.2d 316, 323 (2001) (declining to address the defendant's argument "that the trial court committed plain error by entering the jury room with the jury after the verdict was recorded, but before the sentencing hearing").

Furthermore, Defendant does not request that we suspend the North Carolina Rules of Appellate Procedure to allow us to exercise our discretion to correct an injustice as provided by N.C. R. App. P. 2. Even if we were to review the trial court's decision under N.C. R. App. P. 2, given controlling case law, it is unlikely the trial court erred or that there was an injustice. *See State v. Cameron*, 283 N.C. 191, 194, 195 S.E.2d 481, 483–84 (1973).

Consequently, we decline to review the trial court's decision to withhold the identities of the confidential informants.

## D. Search and Seizure and Motion to Suppress

**[4]** Defendant's final argument on appeal consists of two parts: (i) the trial court erred by finding the information Jim and Ned provided to Detective McKeon established sufficient grounds for the search and seizure, and (ii) the trial court erred in denying Defendant's motion to suppress the cocaine as evidence and in allowing this evidence to be admitted before the jury. Because Defendant did not preserve this argument by objection at trial, we review for plain error. *See Lawrence*, ___ N.C. at ___, 723 S.E.2d at 330. We find no plain error occurred.

"*Terry v. Ohio* and its progeny have taught us that in order to conduct a warrantless, investigatory stop, an officer must have reasonable and articulable suspicion of criminal activity. An anonymous tip can provide reasonable suspicion as long as it exhibits sufficient indicia of reliability. . . . [A] tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration." *State v. Hughes*, 353 N.C. 200, 206–07, 539 S.E.2d 625, 630 (2000) (internal citations omitted). Moreover, "a tip from an informant 'known to [the officer] personally and [who] had provided him with information in the past' is sufficient to provide reasonable suspicion for a stop." *State v. McRae*, 203 N.C. App. 319, 324, 691 S.E.2d 56, 60 (2010) (alterations in original) (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)).

"According to the plain feel doctrine, when conducting a *Terry* frisk for weapons, if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *State v. Williams*, 195 N.C. App. 554, 560, 673 S.E.2d 394, 398 (2009). The officer may seize the object if he or she has probable cause to believe it is contraband. *Id.* "Probable cause exists if the facts and circumstances within the knowledge of the officer were sufficient to warrant a prudent man in believing that the suspect had committed or was committing the offense." *State v. Bowman*, 193 N.C. App. 104, 109, 666 S.E.2d 831, 834–35 (2008) (citation and quotation marks omitted).

Here, the trial court did not commit plain error in concluding "McKeon had reasonable suspicion to conduct a warrantless stop and frisk[.]" McKeon received information from two informants who had in the past provided him with reliable information that led to several

arrests. The informants provided information about Defendant's criminal activity, location, and appearance. *See McRae*, 203 N.C. App. at 325, 691 S.E.2d at 60 (finding reasonable suspicion based on an informant's tip where the informant had previously given reliable information to the arresting officer and had accurately described the defendant, his vehicle, and his location). McKeon's search of Defendant created probable cause for seizure of the cocaine under the "plain feel" doctrine. *See Williams*, 195 N.C. App. at 560, 673 S.E.2d at 398. While searching Defendant, McKeon "felt a large bulge in [Defendant's] cargo pants' pocket. . . . [He] knew exactly what it was once [he] felt it. . . . It was packaged like narcotics would be packaged." Consequently, when McKeon identified the bag as containing narcotics, he had probable cause to arrest Defendant. *See State v. Benjamin*, 124 N.C. App. 734, 740, 478 S.E.2d 651, 655 (1996) ("Given the officer's experience, narcotics training, the size[,] shape and mass of the objects, and defendant's response to [the officer's] question, it became immediately apparent to [the officer] that the objects contained contraband. It was at that moment that [the officer] had probable cause to seize the objects."); *State v. Turner*, 94 N.C. App. 584, 586, 380 S.E.2d 619, 620 (1989) (holding the "[t]he size, shape, and position of the bulge [the detective] observed in defendant's pants" gave him probable cause to arrest).

Defendant relies on *Hughes*, 353 N.C. 200, 539 S.E.2d 625, to argue McKeon did not have reasonable suspicion to stop and search Defendant. *Hughes* involved an informant who told police "a dark-skinned Jamaican [male] . . . who weighs over three hundred pounds and is approximately six foot" was arriving by bus in Jacksonville that day in possession of marijuana and cocaine. *Id.* at 201–02, 539 S.E.2d at 627. The detective in *Hughes* had not previously interacted with the informant. *Id.* at 204, 539 S.E.2d at 628. The police stopped the defendant, who matched the informant's description, searched him with his consent, found marijuana, and arrested him. *Id.* at 202–03, 539 S.E.2d at 628. At the jail, the police also found cocaine on the defendant's person. Our Supreme Court held the informant's information was not sufficient to establish reasonable suspicion to stop and detain the defendant. *See id.* at 209, 539 S.E.2d at 631.

The facts in the present case differ significantly from those in *Hughes*. First, Jim and Ned had previously provided McKeon with reliable information in other investigations. In *Hughes*, on the other hand, "[t]here was no indication that the informant had been previously used and had given accurate information[.]" *Id.* at 204, 539

S.E.2d at 628. The *Hughes* Court thus treated the tip as one from an anonymous informant. *See McRae*, 203 N.C. App. at 325, 691 S.E.2d at 60–61 (citing *Hughes*, 353 N.C. at 208, 539 S.E.2d at 631)).

Second, unlike in *Hughes*, McKeon had additional corroborating evidence beyond the informants' identification of Defendant. For instance, McKeon tracked Defendant to Winston-Salem via GPS and later identified Defendant at Durlain Drive in Raleigh, verifying Jim's story. Moreover, on the day Defendant was arrested, Jim actually saw cocaine in Defendant's possession. Lastly, when McKeon and his team approached Defendant, Gibney testified Defendant exuded a strong odor of marijuana. Given these facts, we determine McKeon and his team had reasonable suspicion to detain Defendant.

Consequently, we find no plain error occurred.

## IV. Conclusion

We conclude the trial court did not err by: (1) failing to advise Defendant of his right to private counsel; (2) failing to instruct the jury concerning entrapment; (3) denying Defendant's motion for disclosure of information about the confidential informants; or (4) denying Defendant's motion to suppress. Consequently, we find

No error.

Judges ERVIN and McCULLOUGH concur.