STATE OF NORTH CAROLINA v. EDWARD WATLINGTON

No. COA11-288

(Filed 18 October 2011)

**1. Constitutional Law—right to counsel—waiver—failure to make thorough statutory inquiry**

The trial court committed reversible error by allowing defendant to represent himself at the habitual felon stage of his trial without making a thorough inquiry under N.C.G.S. § 15A-1242 and obtaining a voluntary, intelligent, and knowing waiver of counsel even though defendant expressed dissatisfaction with his prior counsel and clearly stated his desire to proceed *pro se*. Defendant was entitled to a new trial on his indictment for habitual felon status.

**2. Sentencing—habitual felon—prior record level**

The trial court committed reversible error in a habitual impaired driving and felony failure to appear case by sentencing defendant as a prior record level VI because the State did not prove by a preponderance of the evidence that his federal felony conviction was substantially similar to a class G felony in North Carolina. The case was remanded for resentencing.

Appeal by defendant from judgments entered 8 September 2010 by Judge Edwin G. Wilson in Superior Court, Rockingham County. Heard in the Court of Appeals 15 September 2011.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General William Hugh Bailey, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for defendant-appellant.*

STROUD, Judge.

On 27 April 2007, defendant was arrested for driving while impaired and possession of marijuana. He was later charged with driving while license revoked, habitual impaired driving, and being a habitual felon. On 8 March 2010 at the start of his trial on these charges, defendant pled guilty to the charge of driving while license revoked. Following the trial on the remaining charges, on 9 March 2010, the jury returned verdicts finding defendant not guilty of simple possession of marijuana and guilty of driving while impaired. Because defendant had stipulated to the existence of three prior impaired dri-

ving charges for the purposes of the habitual impaired driving charge, the trial court recorded and accepted the verdict as a conviction for habitual driving while impaired. The trial court then proceeded to the habitual felon phase of the trial, but on 10 March 2010, the final day of the trial, defendant failed to appear. The trial proceeded without defendant's presence, but the jury was unable to reach a verdict on the habitual felon charges and the trial court ultimately declared a mistrial. Defendant was then charged with felonious failure to appear on 10 March 2010 for trial on the habitual felon charge. On the same day, prayer for judgment was continued on the driving while license revoked conviction "until defendant is arrested and available for sentencing." On 3 May 2010, prayer for judgment was continued on the conviction for habitual impaired driving until the habitual felon charge could be retried or was dismissed.

Defendant filed a *pro se* motion for appropriate relief and to have his counsel removed, and these motions came on for hearing on 8 April 2010.[1] The trial court found that the relationship between defendant and his counsel, Mr. Bailey, was "irretrievably damaged[,]" allowed Mr. Bailey to withdraw, and appointed Cathy Stroupe to represent defendant. On 1 June 2010, other pending motions filed by defendant came on for hearing. Although these motions are not included in the record on appeal, from the description of the motions by the trial court,[2] it appears that one of these motions was a motion to proceed *pro se* with the assistance of Ms. Stroupe as standby counsel. Defendant stated that he did not believe that his former attorneys had helped him and that he believed that Ms. Stroupe had lied to him. The trial court then conducted the following colloquy with defendant regarding his motion to proceed *pro se*:

> The Court: But nonetheless, you have the benefit of court appointed counsel. You may view it as being a benefit or not, but nobody is required to have counsel. It is as much a constitutional right to represent one's self as it is to have court appointed counsel when one can't afford to hire a lawyer when one wants a lawyer. So, you know, if you're looking now to discharge your counsel and represent yourself—
>
> The Defendant: And continue on with the case.

1. These motions are not included in our record but the record does include the transcript of this hearing.

2. The trial court stated that it would "construe the defendant's pro se Motion to Proceed in Propria Persona, parentheses, cocounsel ,with [sic] the assistance of Ms. Stroupe as an apparent effort to discharge Ms. Stroupe."

**STATE v. WATLINGTON**

[216 N.C. App. 388 (2011)]

The Court:  —then that is called a waiver of the right to counsel.

The Defendant:  Yes, sir.

The Court:  Is that what you want to do?

The Defendant:  Yes, sir. I'd like to go along with the court thing they have scheduled for the habitual felon and have that heard and get either guilty or not guilty on that and let the cards fall where they fall.

If I might, Your Honor, when I looked at 15A-334, it said no duty of the State to move for a sentence following the Prayer for Judgment within 30 days and in other words, it seems to me they're saying that I would have to move for an imposition of a sentence within 30 days after the Prayer for Judgment.

It's been 30 days since they did the Prayer for Judgment and it just seemed to this was saying that I needed to get a judgment entered. It wasn't up to them to get it entered. It was up to me to get it entered. If they failed to do it, they didn't lose the jurisdiction to impose the sentence.

The Court:  Again, I don't think you're quite understanding what I told you. There cannot be a judgment entered until there is a disposition of the habitual felon indictment.

The Defendant:  Okay. So the one I got for the DWI and the Habitual DWI, the convictions for those can't be done until they do the other one. Okay.

The Court:  Well, the State can choose to dismiss that indictment and then it would be ripe for judgment.

The Defendant:  They offered me a plea bargain for 261 months and that's not a plea bargain at all in my eyes, twenty-two years for something that started out as a misdemeanor DWI. To offer me a 22-year plea bargain, you know, it's really not giving me any options at all.

I plea bargained to everything that I've done. I've been in prison several times, obviously but I've never, you know, not turned down a reasonable plea bargain but right now to offer me 22 years for something that turned out to be a DWI, I just feel like it's making a mockery of the plea bargain system.

But okay, I hear what you're saying. I'd like to proceed by myself. I'd like the case to go on. I got three or four witnesses I'd

like to subpoena to be here and I just had a couple of motions to suppress evidence on that case and I'll be ready to go. I mean, I've done some homework; and I'll just let the cards, as I say, fall where they may.

And then I had read where I could have standby counsel, if the judge so choose to appoint it. I don't want to sit here and do something stupid in the court because I respect the court. I've been in the court—

The Court: Who do you want for standby counsel? You want to be able to choose that?

The Defendant: No, sir. I don't have to choose it but I'm going to be basically trying to present the case as I see it and if they see me not objecting or something so that it can be heard or something or whatever and they cannot let me just make a complete idiot of myself. I feel like I only got one year of college at Elon College, but I did learn to just read things and try to go on what they say. I don't have access to a law library.

But I'm just trying to, you know—I think—like I say, I think I've been hurt more by my first attorney stipulating me to three charges that opened me up to a 22-year sentence, when we didn't even have a chance to present any evidence or make the State prove their case. I think that he did me more harm than good.

And I don't really trust Ms. Stroupe. I did trust her at first but first tell me one thing and come in and do exactly the opposite, then to tell my sister not to even bother to show up because the D.A. has said she's not going to give me a bond, that don't give me a fair shot at having a bond.

And I feel like I would like to have a bond motion because I'm under no bond and only capital murderers would be allowed no bond. I had one failure to appear and I was in jail at the time that happened. So I just don't feel like I've been treated fairly.

But yeah, I'd like to go it by myself and if I can't get a standby counsel, I just have to take my chances, Your Honor. Thank you.

The Court: Anything further from the State?

[The State]: No, Your Honor. Mr. Watlington is still on the current trial calendar. He was number 14 for trial order this morning.

The Court: All right. In the Court's discretion, the motion which the Court will treat as a motion to discharge counsel and to proceed pro se is granted.

The indictments for attaining the status of a habitual felon charge and for felonious failure to appear came back on for hearing on 7 September 2010, with defendant appearing *pro se.* Prior to the start of the trial, the trial court discussed with defendant some of the motions and letters defendant had sent to the court and whether he wanted an attorney to represent him on his motions for appropriate relief. Although defendant did at one point state that he may want an attorney to represent him, ultimately he informed the court that he did not want another attorney, stating that:

Each one I have got, they won't represent me, won't come to see me at the jail. So what's the use of wasting the time and have to stay there six more months waiting for him to get it on for trial when I'm already here. I just don't see the sense in it. Just let the cards fall where they may. I know I'm not qualified to do this, but I trust in God, I trust in the system. I've been in the system before. I would just like to be heard on the cases and go from there. I think that's the best thing I can do.

On 7 September 2010, the jury found defendant guilty of being a habitual felon. On 8 September 2010, defendant pled guilty to felony failure to appear. Defendant was sentenced as a prior record level VI for his felony sentencing, with 19 prior record level points. One of the convictions used to calculate the prior record level was a federal conviction for "possess firearm in commer after F conv" in the Middle District of North Carolina in 1991. This conviction was counted as a class G felony, with four record points. Defendant stipulated to the contents of the prior record level worksheet, but the State did not offer any evidence to demonstrate that the federal conviction was substantially similar to a North Carolina class G felony. The trial court consolidated the habitual impaired driving and felony failure to appear conviction, noting the enhancement based on defendant's habitual felon status, and sentenced defendant to a term of 101 to 131 months imprisonment. Defendant gave notice of appeal in open court.

## I. Waiver of counsel

**[1]** Defendant argues that the "trial court committed reversible error by allowing [him] to represent himself at the habitual felon phase of his trial without making a thorough inquiry under N.C. Gen. Stat.

§ 15A-1242 and obtaining a voluntary, intelligent, and knowing waiver of counsel." This Court has stated that

> [a] criminal defendant's right to representation by counsel in serious criminal matters is guaranteed by the Sixth Amendment to the United States Constitution and Article I, §§ 19, 23 of the North Carolina Constitution. *See Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed.2d 799 (1963). A criminal defendant, on the other hand, also "has a right to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes." *State v. Mems*, 281 N.C. 658, 670-71, 190 S.E.2d 164, 172 (1972). The trial court, however, must insure that constitutional and statutory standards are satisfied before allowing a criminal defendant to waive in-court representation. *See State v. Thomas*, 331 N.C. 671, 673, 417 S.E.2d 473, 475 (1992).
>
> First, a criminal defendant's election to proceed *pro se* must be "clearly and unequivocally" expressed. *See State v. Carter*, 338 N.C. 569, 581, 451 S.E.2d 157, 163 (1994), *cert. denied*, 515 U.S. 1107, 132 L. Ed.2d 263 (1995). Second, the trial court must make a thorough inquiry into whether the defendant's waiver was knowingly, intelligently and voluntarily made. *Id.*

*State v. Hyatt*, 132 N.C. App. 697, 702, 513 S.E.2d 90, 94 (1999). N.C. Gen. Stat. § 15A-1242 (2009) provides as follows:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

Defendant argues that the standard of review for the trial court's ruling permitting defendant to proceed *pro se* is *de novo*, as it raises a question of constitutional rights. The State also argues that the standard of review is *de novo*, as whether the trial judge conducted a "thorough inquiry" is a question of statutory interpretation. Prior cases addressing waiver of counsel under N.C. Gen. Stat. § 15A-1242 have

not clearly stated a standard of review, but they do, as a practical matter, review the issue *de novo*. *See State v. Whitfield*, 170 N.C. App. 618, 620, 613 S.E.2d 289, 291 (2005); *State v. Evans*, 153 N.C. App. 313, 314-15, 569 S.E.2d 673, 674-75 (2002). We will therefore review this ruling *de novo*.

This Court has previously noted that "[t]he inquiry described in G.S. § 15A-1242 is mandatory in every case where the defendant requests to proceed *pro se*." *State v. White*, 78 N.C. App. 741, 746, 338 S.E.2d 614, 616 (1986) (citation omitted). The State argues that despite the fact that the trial court did fail to conduct any inquiry of the type set forth in N.C. Gen. Stat. § 15A-1242, we should defer to the trial court's decision based upon the trial court's interactions with defendant and we should consider "the fact that there is no set standard for making a proper inquiry, the defendant's knowledge of his possible sentence, [and] his familiarity with the court system." Although these factors may be present,[3] similar factors have been present in prior cases in which this Court has held that a proper inquiry was not performed and granted defendant a new trial. For example, in *State v. Cox*, "defendant clearly and unequivocally stated he would represent himself [and] . . . the trial court instructed him to execute a waiver but failed to proceed with the inquiry required under N.C. Gen. Stat. § 15A-1242." 164 N.C. App. 399, 401-02, 595 S.E.2d 726, 728 (2004) (footnote omitted). We held that "[a] written waiver of counsel is no substitute for actual compliance by the trial court with G.S. § 15A-1242 [and concluded] . . . that in the absence of . . . the inquiry required by G.S. § 15A-1242, it was error to permit defendant to go to trial without the assistance of counsel." *Id.* at 402, 595 S.E.2d at 728 (citation and quotation marks omitted). In *State v. Hyatt*, the defendant signed a waiver of counsel which

> asserts that [he] was informed (1) of the charges against him, (2) the nature of the statutory punishment for each charge, and (3) the nature of the proceedings against him" [but] the record disclose[d] that the trial court failed to inform [him] of any of these things. . . . Rather, the record discloses only that the trial court met its mandate of informing [the defendant] that he had the right to appointed counsel. This falls well short of the requirements of

---

3 Defendant apparently did not understand what his possible sentence may be, as when the trial court began the sentencing hearing and was considering the prior record level worksheet, defendant stated "I didn't understand what the actual sentence was or could be. I mean, the level VI puts me in the—." The trial court then gave defendant an opportunity to discuss his questions with standby counsel.

N.C. Gen. Stat. § 15A-1242. Accordingly, because it is prejudicial error to allow a criminal defendant to proceed *pro se* without making the inquiry required by N.C. Gen. Stat. § 15A-1242, we must grant this defendant a new trial.

132 N.C. App. 697, 703-04, 513 S.E.2d 90, 94-95 (1999). Likewise, in *State v. White*, the defendant "clearly indicated that he desired to proceed *pro se* when the case was called for trial" and

> the trial court was required at that point to make the inquiry described in G.S. § 15A-1242. Such was not done in this case. We conclude that in the absence of (1) a clear indication by defendant that he wished to proceed *pro se* and (2) the inquiry required by G.S. § 15A-1242, it was error to permit defendant to go to trial without the assistance of counsel.

78 N.C. App. 741, 746, 338 S.E.2d 614, 617 (1986). In *State v. Gordon*, the record also showed no inquiry under N.C. Gen. Stat. § 15A-1242 and although there was

> some evidence that defendant understood that the charges were serious, there is no evidence that he was informed of the nature of the charges and the range of permissible punishments or that he understood and appreciated the consequences of proceeding without counsel. Absent such evidence, the court should not have permitted him to proceed *pro se*.

79 N.C. App. 623, 625-26, 339 S.E.2d 836, 838 (1986) (citations omitted). We must therefore conclude that, despite the defendant's dissatisfaction with his prior counsel and clearly-stated desire to proceed *pro se*, the trial court erred by failing to conduct an inquiry as required by N.C. Gen. Stat. § 15A-1242 and defendant is therefore entitled to a new trial on his indictment for habitual felon status.

## II. Sentencing

[2] Defendant argues that the "trial court committed reversible error by sentencing [him] as a prior record level VI because the State did not prove by a preponderance of the evidence that [his] federal felony conviction was substantially similar to a class G felony in North Carolina." Defendant argues, and the State concedes, that if the federal felony conviction had not been counted as a class G felony, defendant would have had fewer than 19 record level points and would be sentenced at record level V. Because we have granted defendant a new trial above, he will necessarily be sentenced again on the convictions for habitual impaired driving and felony failure to

appear, either as an habitual felon or not, so this issue regarding his record level for felony sentencing is likely to arise upon resentencing and we will address it briefly.

Despite defendant's stipulation to the sentencing worksheet[4], the determination that a conviction from another jurisdiction is "substantially similar to an offense in North Carolina" is a question of law which cannot be determined by the defendant's stipulation. *State v. Henderson*, 201 N.C. App. 381, 385-87, 689 S.E.2d 462, 465-66 (2009). The State acknowledges that it did not present "any evidence to support a showing of substantial similarity" between the federal felony conviction and a class G felony in North Carolina, but seeks to demonstrate this similarity before this Court. This Court has previously determined that the State cannot prove for the first time on appeal that a conviction from another jurisdiction is substantially similar to a North Carolina offense, particularly where the record does not include sufficient information regarding the prior conviction. *See id.* at 388, 689 S.E.2d at 467 ("Although we recognize that it may be possible for a record to contain sufficient information regarding an out-of-state conviction for this Court to determine if it is substantially similar to a North Carolina offense, the record before us does not. Accordingly, we will not speculate as to whether the State has for the first time, in its brief on appeal, properly identified the out-of-state statutes for comparison."). Just as in *Henderson*, our record does not include sufficient information to permit us to determine substantial similarity. The federal conviction is identified only by an abbreviated title, case number, and date, and although it may have been perfectly clear to the State and to defendant what federal statute the conviction was based upon, our record does not include that information. Even if we were to assume that the federal statute identified by the State in its brief is the correct statute, as noted by defendant, 18 U.S.C. 922(g) includes multiple subsections which establish several different firearm offenses. The worksheet does not contain enough information for the trial court or this Court to compare defendant's federal conviction to a particular North Carolina crime. Upon resentencing, the trial court must make a determination as to whether defendant's federal conviction is "substantially similar" to a North Carolina crime, determine the level of felony of the North Carolina crime, and assign points accordingly. If the State fails to present sufficient evidence regarding the federal conviction, it must be

---

4. We note that defendant made this stipulation *pro se*, and we have determined above that he was not properly advised regarding his right to counsel pursuant to N.C. Gen. Stat. § 15A-1242, which would also render his stipulation void.

counted as a Class I felony, for which two points would be assigned. *See* N.C. Gen. Stat. § 15A-1340.14(e) (2009).

For the foregoing reasons, we grant defendant a new trial on his indictment for habitual felon status.

NEW TRIAL.

Judges GEER and THIGPEN concur.