TYSON, Judge, concurring in part and dissenting in part.
I. Background
City of Locust Police Officer Trent Middlebrook was patrolling during July of 2016. He came upon and verified the validity of the registration of a vehicle. Officer Middlebrook was informed the owner of the vehicle, Defendant herein, Jeffrey Martaez Leroy Simpkins' driver's license was suspended, and an outstanding warrant for his arrest was issued and pending. Officer Middlebrook stopped the vehicle and asked Defendant to present his driver's license and registration. Defendant refused to provide either of them and was uncooperative and belligerent. Officer Middlebrook placed Defendant under arrest.
Defendant initially appeared and was tried in district court. He refused to enter a plea, and the trial court noted in the record that it entered a plea of not guilty on his behalf. He also twice refused to sign a waiver of counsel, after being advised of his rights as set out in North Carolina General Statutes § 15A-1242. Included in the record on appeal is an unsigned and undated waiver of counsel form with a handwritten note that states, "Refused to respond to to [sic ] inquiry by the court and mark as refused at this point[.]"
There is another waiver of counsel form in the record, dated 16 August 2016 and signed by the presiding judge, which shows Defendant being advised of his rights as set out in North Carolina General Statutes § 15A-1242, and also contains a handwritten notation, "Defendant refused to sign waiver of counsel *853 upon request by the Court[.]" On 16 August 2016, Defendant was tried and convicted in district court of resisting a public officer and failing to carry a registration card. The district court's judgments also expressly note that Defendant had waived counsel. Defendant appealed his convictions to superior court.
In superior court, Defendant did not assert he was indigent, but requested appointment of counsel, "not paid for by the State of North *340 Carolina." No affidavit of indigency appears in the record. He also refused to enter a plea or to sign a waiver of counsel. After an extensive colloquy with the trial court, a plea of not guilty was entered on his behalf and the court appointed standby counsel. Defendant's "Living man" pro se motion to dismiss asserting lack of jurisdiction was heard and denied by written order dated 7 June 2017. Defendant eventually elected in open court to dismiss and to waive his appointed standby counsel, and to proceed pro se . Defendant was tried by a jury and convicted of resisting a public officer and of failing to exhibit/surrender his license. The trial court entered judgments on the verdicts. The judgments again expressly note that Defendant had waived counsel. Defendant appeals.
II. Subject Matter Jurisdiction
I concur to dismiss Defendant's challenge to subject matter jurisdiction. Defendant's counsel conceded that State v. Jones , --- N.C. App. ----, 805 S.E.2d 701 (2017), aff'd , 371 N.C. 548, 819 S.E.2d 340 (2018), is the controlling authority on this issue and withdrew this argument.
III. Issue
Defendant argues that "the trial court erred by failing to make a thorough inquiry of ... [his] decision to proceed pro se as required by N.C. Gen. Stat. § 15A-1242."
IV. Standard of Review
Whether the trial court complied with North Carolina General Statutes § 15A-1242 is reviewed de novo . See State v. Watlington , 216 N.C. App. 388, 393-94, 716 S.E.2d 671, 675 (2011) ("Prior cases addressing waiver of counsel under N.C. Gen. Stat. § 15A-1242 have not clearly stated a standard of review, but they do, as a practical matter, review the issue de novo . We will therefore review this ruling de novo .") (citations omitted)). Whether Defendant was entitled to or forfeited counsel is also reviewed de novo . See State v. Poole , 305 N.C. 308, 318, 289 S.E.2d 335, 341-42 (1982) ; State v. Blakeney , 245 N.C. App. 452, 459, 782 S.E.2d 88, 93 (2016).
V. Waiver or Forfeiture of Counsel
The State acknowledged at oral argument Defendant was not informed in the superior court of the "range of permissible punishments[,]" and Defendant had not waived counsel under North Carolina General Statutes § 15A-1242.
*341 North Carolina General Statutes § 15A-1242 provides,
A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
(2) Understands and appreciates the consequences of this decision; and
(3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.
N.C. Gen. Stat. § 15A-1242 (2017).
Defendant concedes he
was advised of his right to have counsel and of his right to have appointed counsel. However, there is no showing on the record that the trial court made the appropriate advisements or inquires to determine that [he] understood and appreciated the consequences of his decision or comprehended the nature of the charges and proceedings and the range of permissible punishments.
While the trial court did inform Defendant he could be subjected to "periods of incarceration" if convicted, the transcript confirms Defendant was not explicitly informed of "the range of permissible punishments." N.C. Gen. Stat. § 15A-1242. In State v. Sorrow , this Court previously held: "The trial court's *854 inquiry under N.C. Gen. Stat. § 15A-1242 is mandatory and failure to conduct such an inquiry is prejudicial error." State v. Sorrow , 213 N.C. App. 571, 573, 713 S.E.2d 180, 182 (2011) (citation and quotation marks omitted).
The State argues a per se new trial is not required, as Defendant forfeited counsel and cannot show any prejudice, given his history of belligerent and recalcitrant behaviors, and his non-acceptance and continued denial of and challenge to the trial court's jurisdiction over him. Defendant persisted in his jurisdictional challenges, even after his filed motion to dismiss on jurisdiction was formally denied by written order with findings of fact and conclusions of law, as Defendant had requested. Defendant has not appealed the entered order denying his motion to *342 dismiss, and any arguments concerning the trial court's jurisdiction are conceded and wholly without merit.
The State argues Defendant forfeited his right to counsel and asserts the trial court was not required to comply with North Carolina General Statutes § 15A-1242. Both parties' arguments cite and rely upon State v. Blakeney , 245 N.C. App. 452, 782 S.E.2d 88 (2016). Blakeney discusses two means by which a defendant may lose his right to be represented by counsel: (1) voluntary waiver after being fully advised under North Carolina General Statutes § 15A-1242 ; and, (2) forfeiture of the right by serious misconduct. Id. at 459-61, 782 S.E.2d at 93-94.
First, a defendant may voluntarily waive the right to be represented by counsel and instead proceed pro se . Waiver of the right to counsel and election to proceed pro se must be expressed clearly and unequivocally. Once a defendant clearly and unequivocally states that he wants to proceed pro se , the trial court must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel. A trial court's inquiry will satisfy this constitutional requirement if conducted pursuant to N.C.G.S. § 15A-1242....
....
The second circumstance under which a criminal defendant may no longer have the right to be represented by counsel occurs when a defendant engages in such serious misconduct that he forfeits his constitutional right to counsel. Although the right to counsel is guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I of the North Carolina Constitution, in some situations a defendant may lose this right:
Although the loss of counsel due to defendant's own actions is often referred to as a waiver of the right to counsel, a better term to describe this situation is forfeiture. Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right. A defendant *343 who is abusive toward his attorney may forfeit his right to counsel.
Id. (internal citations and quotation marks omitted).
The Court in Blakeney also describes a third manner, a mixture of waiver and forfeiture, in which a defendant may lose the right to counsel:
Finally, there is a hybrid situation (waiver by conduct) that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed pro se and, thus, as a waiver of the right to counsel. Recognizing the difference between forfeiture and waiver by conduct is important. First, because of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct. On the other hand, a waiver by conduct could be based on conduct less severe than that sufficient to warrant a forfeiture. This makes sense since a waiver by conduct requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding pro se . A defendant who engages in dilatory conduct having been warned that such conduct will be treated as a request to proceed pro se *855 cannot complain that a court is forfeiting his right to counsel.
Id. at 464-65, 782 S.E.2d at 96 (emphasis supplied) (quotation marks omitted).
This Court in Blakeney stated:
In this case, the State argues that defendant forfeited his right to counsel, relying primarily upon generalized language excerpted from Montgomery stating that a forfeiture of counsel results when the state's interest in maintaining an orderly trial schedule and the defendant's negligence, indifference, or possibly purposeful delaying tactic, combine to justify a forfeiture of defendant's right to counsel. The State also cites State v. Quick , 179 N.C. App. 647, 649-50, 634 S.E.2d 915, 917 (2006), in which this Court cited Montgomery for the proposition that any willful actions on the part of the defendant that result in the absence of defense counsel constitutes a forfeiture of the right to counsel. Montgomery did not, however, *344 include such a broad holding or suggest that any willful actions resulting in the absence of defense counsel are sufficient to constitute a forfeiture. Instead, as this Court has observed, forfeiture of the right to counsel has usually been restricted to situations involving egregious conduct by a defendant[.]
Id. at 461, 782 S.E.2d at 94 (emphasis supplied) (internal citations marks omitted).
This Court in Blakeney reviewed behavior in prior cases to support forfeiture.
Although the United States Supreme Court has never directly addressed forfeiture of the right to counsel, the Court's other holdings demonstrate reluctance to uphold forfeiture of a criminal defendant's U.S. Constitutional rights, except in egregious circumstances. Additionally, the federal and state courts that have addressed forfeiture have restricted it to instances of severe misconduct.
There is no bright-line definition of the degree of misconduct that would justify forfeiture of a defendant's right to counsel. However, our review of the published opinions of our appellate courts indicates that, as discussed in Wray , forfeiture has generally been limited to situations involving severe misconduct and specifically to cases in which the defendant engaged in one or more of the following: (1) flagrant or extended delaying tactics, such as repeatedly firing a series of attorneys; (2) offensive or abusive behavior, such as threatening counsel, cursing, spitting, or disrupting proceedings in court; or (3) refusal to acknowledge the trial court's jurisdiction or participate in the judicial process, or insistence on nonsensical and nonexistent legal rights.
Id. at 461-62, 782 S.E.2d at 94 (emphasis supplied) (quotation marks omitted).
The majority's opinion includes brief descriptions of the nine prior decisions cited in Blakeney , wherein this Court found the defendants had forfeited their right to counsel. Whether a "defendant engage[d] in such serious misconduct that he forfeit[ed] his constitutional right to counsel," or if the "hybrid situation" is applicable where "[a] defendant *345 who engages in dilatory conduct having been warned that such conduct will be treated as a request to proceed pro se cannot complain that a court is forfeiting his right to counsel." Id. at 460, 465, 782 S.E.2d at 93-94, 96.
In their briefs, both the State and Defendant quote large sections of the discussions had by Defendant and the trial court as evidence of forfeiture or the lack thereof. Overall, the transcript supports a finding and conclusion that Defendant forfeited his right to counsel. From the start of the proceedings, Defendant repeatedly questioned the jurisdiction of the trial court:
[Defendant]: Objection, sir. I did not enter any pleas. Do I need to stand?
THE COURT: What is the basis of your objection?
[Defendant]: There is no proof of jurisdiction here. There hasn't been since last year. I've been coming here over a year, and there's no evidence of anything besides the allegation.
THE COURT: Well, sir, evidence is put on at the trial. So there is no evidence at this point.
[Defendant]: So how can you force someone here without evidence, sir?
*856 THE COURT: You've been charged with a crime. And this is your day in court, your opportunity to be heard.
The trial court and Defendant engaged in detailed discussions concerning Defendant's representation:
[The Court]: Mr. Simpkins, I see that in the Court's file there are waiver of counsel forms with notations that you refused to respond when you were notified of your right to an attorney, and so you were marked down as having waived an attorney. You are charged with violations that could subject you to periods of incarceration. And so I would like to advise you that it is your right to have an attorney and if you cannot afford an attorney, the State can provide one for you. If you would like to apply for court-appointed counsel, we'll have you fill out an affidavit. If you wish to retain your own, you certainly have that opportunity as well. How would you like to proceed with respect to an attorney?
*346 [Defendant]: May I proceed with counsel that's not paid for by the plaintiff?
[The Court]: There's no plaintiff in this case. Would you like to hire your own attorney or would you like the State to provide an attorney for you if you qualify for one ?
[Defendant]: How is there no plaintiff, sir?
[The Court]: Sir, this is the second time that I'm going to remind you that it is not your opportunity to ask questions of the Court. The Court asks you questions. The question before you right now is: Would you like to apply for a court-appointed attorney, or would you like to retain your own attorney or would you like to waive your right to an attorney?
[Defendant]: I would like counsel that's not paid for by the State of North Carolina.
[The Court]: Okay. So you would like an opportunity to retain your own attorney ?
[Defendant]: That's not paid for by the State of North Carolina, yes.
(Emphasis supplied).
When asked for its response, the State objected unless Defendant could retain the counsel within fifteen minutes because "[h]e's been advised, I would contend, on at least two or three occasions ... as to his rights to obtain an attorney."
The colloquy continued, and Defendant was appointed standby counsel:
[The Court]: Mr. Simpkins, according to the court file, you were advised of your right to an attorney on August 16th of 2016.
[Defendant]: I asked for standby counsel then, sir.
[The Court]: Would you like to be appointed standby counsel today?
[Defendant]: Yes. Sure.
[The Court]: All right.
*347 Defendant never asserted he was indigent or was unable to afford to retain counsel. The record before us does not contain Defendant's affidavit of indigency to qualify for appointed counsel. Defendant's right to be appointed counsel was dependent upon a claim, an affidavit, and a finding of him being indigent. State v. Cradle , 281 N.C. 198, 204, 188 S.E.2d 296, 300 (1972).
Defendant continued to question the trial court's jurisdiction prior to and after jury selection:
THE COURT: Any questions before we proceed?
[Defendant]: Can the Court proceed without evidence of jurisdiction?
THE COURT: Sir, evidence will be presented during the case in chief after a jury is selected. Any other questions?
[Defendant]: If -- no.
...
[Defendant]: Can I see the evidence of jurisdiction then?
THE COURT: Sir, you -- you are the defendant in a criminal proceeding.
Following the trial court's address to the prospective jurors, the jurors left the courtroom and a bench conference was held between the trial court, Defendant, Defendant's standby counsel, and the prosecutor, concerning a possible plea:
THE COURT: What I heard at the bench was the mention of a potential plea. So, *857 Mr. Simpkins, is it your wish to enter a plea in this matter?
[Defendant]: I've been trying to enter a plea. I just wanted the evidence of jurisdiction.
The plea negotiations were ultimately unsuccessful. The trial court advised Defendant on his right to proceed with or to waive his standby counsel, which Defendant decided to waive and to proceed pro se . Defendant conducted jury selection on his own.
After bringing the trial court's attention to a previously filed motion to dismiss, and hearing the trial court's ruling on the motion, Defendant again argued with the trial court concerning its jurisdiction:
*348 THE COURT: All right. Would you like to be heard on the motion?
[Defendant]: No. The motion speaks for itself, sir.
THE COURT: All right. The motion to dismiss is denied. Thank you.
[Defendant]: On what grounds, sir?
THE COURT: Well, to the extent that the motion is a motion to dismiss for lack of jurisdiction, I find and conclude that this Court has jurisdiction --
[Defendant]: May I have a copy of that, sir?
THE COURT: A copy of what?
[Defendant]: The jurisdiction.
THE COURT: Jurisdiction is not reduced to writing or a document that I can hand you. Thank you.
[Defendant]: So it's territorial?
THE COURT: Sir, I've ruled on the motion. Thank you.
[Defendant]: I don't get to speak at all, sir?
THE COURT: You were just heard on the motion. I issued my ruling. I issued my findings and conclusion. And that is all for that matter. Thank you, sir.
[Defendant]: Okay. Do I have a right to a fair and meaningful hearing if there's conflict of interest?
THE COURT: I'm sorry?
[Defendant]: Do I have the right to a fair and meaningful hearing if there's a conflict of interest?
THE COURT: You have a right to a fair and impartial hearing of your case, which is what we're doing right now. Okay.
[Defendant]: So --
THE COURT: Please bring in the jury.
[Defendant]: Sir? And what is the jurisdiction?
*349 THE COURT: This is not an appropriate time to be asking questions. The jurisdiction of the superior court of the State of North Carolina.
[Defendant]: Does jurisdiction have to be submitted before the proceedings proceed?
THE COURT: Please have a seat, sir.
Defendant repeatedly: (1) contested jurisdiction; (2) refused to enter pleas, sign waivers, or complete an affidavit of indigency to qualify for appointed counsel; (3) failed to retain his own counsel in the ten months between his district court and superior court trials; (4) filed motions and raised arguments that were not legally sound; and, (5) made unreasonable requests of the Court. Defendant repeatedly questioned the jurisdiction of the trial court and stated that he wanted an appointed attorney but "not one paid for by the State of North Carolina," something clearly not within the trial court's power.
This appearance and trial took place over three days. Defendant argued he was not informed his trial would start that day, but asserted he had "to be here or ... be arrested." Defendant requested and was appointed standby counsel. The trial court informed Defendant that at any point standby counsel could "step in" as counsel.
The trial court warned Defendant that he was engaging in "dilatory conduct" by arguing and continuing to question the jurisdiction of the court. Blakeney, 245 N.C. App. at 464-65, 782 S.E.2d at 96. Before the jury was empaneled, Defendant initially indicated he intended to enter a plea, though negotiations failed. The trial court announced it was turning its "attention to the issue of standby counsel," and Defendant waived his right to standby counsel.
Defendant sought to delay the process by repeatedly arguing and asking for rulings on jurisdiction, offering and withdrawing guilty pleas, requesting and dismissing standby counsel, and seeking to retain counsel after a ten-month delay between trials and then failing to do so. Defendant never asserted he *858 was indigent and eligible for appointed counsel, nor filed an affidavit of indigency. Viewing the record as a whole, from arrest through district and superior court, Defendant's conduct, tactics, and arguments were designed to deny the legitimacy and jurisdiction of the courts and to delay or obstruct its proceedings. Defendant's prior record reflects extensive contact with the legal system in multiple states and reflects his general attitude that the law does not apply to him and he is above it. *350 Defendant, like the defendants in the cases of Montgomery , Quick , Rogers, Boyd , Cureton , Mee , and Joiner , refused to cooperate, was disruptive and argumentative, explicitly waived counsel twice in district court, failed to hire his own attorney over the course of several months between his district court convictions in August and his scheduled trial in superior court the following June. See id. at 462-63, 782 S.E.2d at 94-95.
In cases with more factual similarities, Brown and Leyshon , the defendants were found to have "obstructed and delayed the trial proceedings" because they had at least three hearings to discuss the matters. The defendants' appearances, motions, and trials in superior court occurred over multiple days. See State v. Brown , 239 N.C. App. 510, 519, 768 S.E.2d 896, 901 (2015) ; State v. Leyshon , 211 N.C. App. 511, 518-19, 710 S.E.2d 282, 288-89 (2011).
The facts before us also diverge from Blakeney , as that Court specifically enumerated a ground for not finding forfeiture because the defendant did not challenge or deny the jurisdiction of the court. Blakeney , 245 N.C. App. at 463, 782 S.E.2d at 95. Here, Defendant repeatedly denied the trial court's jurisdiction, argued frivolous motions and grounds as a "Living man" and sovereign citizen, refused to accept the trial court rulings, and insisted an attorney be provided for him, but not one "paid for by the State of North Carolina," an unavailable option. In State v. Bullock and State v. McCrowre , the defendants had the clear intent and opportunity to hire private counsel prior to trial. See Blakeney , 245 N.C. App. at 467-68, 782 S.E.2d at 97-98 ; State v. Bullock , 316 N.C. 180, 185, 340 S.E.2d 106, 108-109 (1986) ; State v. McCrowre , 312 N.C. 478, 480, 322 S.E.2d 775, 776-77 (1984).
Looking at the totality of Defendant's statements, conduct, actions, demeanor, and knowledge from prior multiple arrests through trials in both trial court divisions, Defendant knowingly forfeited his right to counsel, dismissed standby counsel, and elected to proceed pro se . Defendant also has made no showing nor argued that he was indigent and could not afford, or was unable, to retain counsel during the ten months pendency of his appeal from district court. His arguments are without merit.
VI. Conclusion
Defendant concedes and withdraws his argument on appeal challenging jurisdiction. The State concedes Defendant did not waive his right to counsel under North Carolina General Statutes § 15A-1242. Defendant's overall demeanor and conduct, from arrest through trial *351 in superior court, supports a finding and conclusion that he dismissed standby counsel and forfeited his right to counsel by frivolous and repeated objections to jurisdiction, serious misconduct, and dilatory tactics, all after being warned of the consequences of his behavior.
Defendant received a fair trial, free of prejudicial errors he preserved or argued. I find no error in Defendant's jury convictions or in the judgments entered thereon. I respectfully dissent.