IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-551

Filed 19 March 2025

Wake County, Nos. 19CR204688-910—93-910

STATE OF NORTH CAROLINA

v.

DALLAS JEROME MCGIRT, Defendant.

Appeal by defendant from judgment entered 1 June 2023 by Judge G. Bryan Collins in Wake County Superior Court. Heard in the Court of Appeals 15 January 2025.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Elizabeth B. Jenkins, for the State.*

*Mary McCullers Reece for defendant-appellant.*

FLOOD, Judge.

Defendant Dallas Jerome McGirt appeals from the trial court's judgment finding him guilty of four counts of statutory sex offense with a child and ten counts of indecent liberties with a child. On appeal, Defendant argues the trial court erred in concluding Defendant voluntarily waived his right to counsel, and in the alternative, forfeited his right to counsel. We likewise address whether Defendant waived his right to counsel by the hybrid situation of waiver by conduct with a

- 1 -

warning, which combines aspects of waiver and forfeiture. Upon review, we conclude Defendant did not "clearly and unequivocally" waive his right to counsel, commit "egregious misconduct" to forfeit his right to counsel, nor waive his right to counsel by engaging in dilatory conduct after receiving a warning. We therefore reverse and remand for a new trial.

## I. <u>Factual and Procedural Background</u>

On 8 April 2019, Defendant was indicted by a grand jury for six counts of statutory sexual offense with a child and ten counts of indecent liberties with a child. The trial court found Defendant to be indigent and ordered that Defendant be given court-appointed counsel from the public defender's office. The public defender's office, however, moved to withdraw as counsel for having previously represented one of the victim's mothers, which the trial court granted.

The trial court then appointed outside counsel, ordering James M. Wilson to be Defendant's counsel. Mr. Wilson, however, left private practice to work for the Attorney General's Office and could no longer represent Defendant. The trial court reordered that outside counsel be appointed, and Cindy Popkin-Bradley was appointed as Defendant's counsel on 20 November 2019. On 3 May 2021, Ms. Popkin-Bradley moved to withdraw as Defendant's counsel for "personal reasons," stating that she could "not be effective in defending [Defendant]." The trial court granted the motion and again ordered that Defendant be appointed substitute counsel.

On 19 April 2022, Defendant filed a handwritten motion alleging that

Margaret Lumsden had been appointed to represent him in May 2021. Defendant claimed he was dissatisfied with Ms. Lumsden's representation, stating that she had refused to meet his objectives, had lied to him about withdrawing from his case after his request for her to do so, and had lied to him about her being on vacation. Defendant requested that the trial court dismiss her from his case. The trial court did not grant or deny the motion, but entered an order providing that because Defendant had filed this request pro se, but was still under representation by Ms. Lumsden, "the [trial c]ourt must conduct an in-person colloquy in open court before the [trial c]ourt will grant [Defendant's] request[,]" pursuant to N.C.G.S. § 7A-457. The trial court stated that if Defendant wished for this hearing to be held, "[Defendant] may request that [his] attorney schedule a hearing[.]"

On 16 May 2022, Defendant filed another handwritten motion, requesting that the trial court grant him a hearing date on the matter, and further explaining that Ms. Lumsden "went missing [in] September 2021," returned 29 March 2022, and "has been missing since." Defendant lamented in his motion that "May 2022 makes one year that she has been on my case and has not accomplished any of my objectives or anything at all. Once again, I feel it's time to move on with a new attorney who is willing to help." Defendant wrote, "[a]t this time, I would like to go *pro se* and have court appointed counsel on stand-by."

On 3 June 2022, the trial court granted Defendant's motion in part, allowing his counsel to be withdrawn, but ordered again that outside counsel be appointed.

- 3 -

The trial court appointed Charles Christopher, Jr. to be Defendant's counsel.

On 18 August 2022, Defendant again wrote a handwritten letter to the trial court, requesting Mr. Christopher to be fired, alleging that Mr. Christopher "has yet to come and see me." On 24 April 2023, Mr. Christopher moved to withdraw as Defendant's counsel, stating that "Defendant refuses to discuss his case with this attorney or assist this attorney in any way" and that Defendant refused to meet with him on 21 April 2023.

On 4 May 2023, three weeks before the matter was set for trial, counsel's motion to withdraw came on for hearing. At the hearing, the trial court pointed out that Mr. Christopher had attempted to meet with Defendant, and Defendant responded that Mr. Christopher "wanted to play word games," and that Defendant would have one of his family members "buy [Mr. Christopher] a Scrabble game for Christmas."

The trial court granted Mr. Christopher's motion to withdraw, and then addressed Defendant:

> We need to consider if you have effectively waived your right to the assistance of court-appointed counsel anyway and that you need to represent yourself or if we need to appoint standby counsel to assist you with this case. What are you asking to do, just so I have an understanding of that first?

Defendant replied: "Your Honor, I've been held almost [fifty] months, and it doesn't make sense. From my third attorney, Cindy Bradley, sat on my case

[eighteen] months, provided no assistance, had no communication with her. She didn't even request the motion for discovery. She never requested one." The trial court asked whether the State had anything to say about Defendant's counsel history. The State's attorney responded:

> The State has every single time tried to get this to trial, and so he has continued to behave in ways that are making that impossible. The State is ready to proceed on May 30th. This has been set for several months, and I would ask that we either appoint somebody, potentially Mr. Christopher, as standby since he is aware of this case. Every single lawyer that he has had, I have given discovery, full discovery to. I actually recopied discovery for Mr. Christopher so I know he had all of it, so I would submit that that would make the most sense, to do standby counsel with somebody who is aware of the case and proceed.

The trial court then asked Defendant a series of questions: whether there was anything impairing Defendant's ability to understand what was happening in his case, to which Defendant responded there was nothing to impair him; whether Defendant could read, write, hear, and understand, to which Defendant responded in the affirmative; and whether Defendant understood the minimum statutory sentencing, to which Defendant responded in the affirmative. The trial court next asked Defendant: "[Y]ou do understand that you have had the right to have attorneys represent you, but it seems as though you've five times not been satisfied with counsel that's been provided[?]" Defendant acknowledged he had not been satisfied with counsel.

The trial court then stated to Defendant, "I'm going to find that you have --

that you have waived your right to the assistance of counsel. I will not assign a sixth attorney to represent you on these matters. The case -- the case can still move forward to trial. I will assign standby counsel." Defendant did not object.

The trial court entered an order, finding Defendant was waiving counsel, and ordering standby counsel be appointed by the public defender's office. Additionally, the trial court ordered that Defendant have access to the law library so that he could prepare for trial.

On 22 May 2023, Defendant requested court-appointed counsel, and the trial court denied his request, stating in an order:

> Defendant currently represents himself (case is already set for trial) and would like court appointed counsel; the court finds [] Defendant has previously waived his right to court appointed counsel and can still have Mr. Liles as stand-by; Defendant can hire an attorney but the motion to get court appointed counsel is denied.

On 30 May 2023, the matter came on for trial, and the State filed a motion to have standby counsel, rather than Defendant, examine the prosecuting witnesses. Defendant did not object, and the trial court granted the motion.

At trial, standby counsel questioned the prosecuting witnesses, and otherwise, Defendant represented himself. At the close of all evidence, the jury convicted Defendant of four counts of statutory sex offense with a child and ten counts of indecent liberties with a child. The trial court then sentenced Defendant to minimum sentences totaling seventy-five years of imprisonment. Defendant timely appealed.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to review an appeal from a final judgment by a superior court, pursuant to N.C.G.S. §§ 7A-27(b)(1) and 15A-1444(a) (2023).

## III. <u>Standard of Review</u>

This Court reviews de novo a criminal defendant's appeal regarding wavier of counsel. *See State v. Jenkins*, 273 N.C. App. 145, 150 (2020). Under a de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33 (2008) (citation omitted).

## IV. <u>Analysis</u>

On appeal, Defendant argues the trial court erred in concluding (A) he voluntarily waived his right to counsel, and in the alternative, (B) he forfeited his right to counsel. We address each argument, in turn. We likewise address (C) whether Defendant waived his right to counsel through the hybrid situation of waiver by conduct with a warning.

### A. Voluntary Wavier of Counsel

Defendant first argues the trial court erred in concluding he voluntarily waived his right to representation. Specifically, Defendant contends he "did not 'clearly and unequivocally' request to proceed pro se at the 4 May 2023 hearing where the trial court found voluntary waiver of counsel." We agree.

Criminal defendants have a constitutional right to the assistance of counsel

under both the United States Constitution and the North Carolina State Constitution. *See* U.S. Const. amend. VI.; *see also* N.C. Const. art. I, §§ 19, 23; *Powell v. Alabama*, 287 U.S. 45, 66 (1932); *State v. McFadden*, 292 N.C. 609, 611 (1977). "Criminal defendants also have the absolute right to waive counsel, represent themselves, and make trial strategy decisions without the assistance of counsel." *State v. Jones*, 292 N.C. App. 493, 497 (2024) (citation omitted).

Before a defendant may waive this right, however, "a trial court must conduct a statutorily-required colloquy to determine that 'constitutional and statutory safeguards are satisfied.'" *Id.* at 497 (quoting *State v. Moore*, 362 N.C. 319, 322 (2008)). During this colloquy, the trial court must determine "whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel." *Moore*, 362 N.C. at 322. "[A] criminal defendant's election to proceed *pro se* must be 'clearly and unequivocally' expressed." *State v. Watlington*, 216 N.C. App. 388, 393 (2011).

The trial court may enter an order to allow a defendant to waive their right to counsel only after being satisfied the defendant:

> (1) has been clearly advised of his rights to the assistance of counsel, including his right to the assignment of appointed counsel when he is so entitled; (2) understands and appreciates the consequences of the decision; and, (3) comprehends the nature of the charges and proceedings and the range of permissible punishments.

*Jones*, 292 N.C. App. at 498 (citation omitted); *see also* N.C.G.S. § 15A-1242 (2023)

(codifying this procedure). We have held that during a trial court's inquiry as to a defendant's understanding of the decision to proceed pro se, "[t]he trial court must specifically advise a defendant of the possible maximum punishment, of the range of permissible punishments, and of the consequences of representing himself. Failing to advise a defendant of any of these requirements renders the subsequent waiver invalid." *State v. Lindsey*, 271 N.C. App. 118, 127 (2020) (cleaned up); *see also State v. Frederick*, 222 N.C. App. 576, 583 (2012) (holding the trial court inadequately advised the defendant of the range of permissible punishments by telling the defendant "you can go to prison for a long, long time," and "if you're convicted of these offenses, the law requires you get a mandatory active prison sentence").

"A written waiver is important evidence to show a defendant wishes to act as [his] own attorney." *Jenkins*, 273 N.C. App. at 151. "When a defendant executes a written waiver which is in turn certified by the trial court, the waiver of counsel will be presumed to have been knowing, intelligent, and voluntary, unless the rest of the record indicates otherwise." *Id.* at 151 (citation omitted). A written waiver, however, "is something in addition to the requirements of N.C.G.S. § 15A-1242, not an alternative to it." *Id.* at 151 (citation omitted) (cleaned up). "Any waiver of counsel shall be effective only if the court finds of record that at the time of waiver the [] person acted with full awareness of his rights and of the consequences of the waiver." N.C.G.S. § 7A-457(a) (2023).

Looking to our case law, we have held a defendant has "voluntarily, knowingly

and intelligently" waived his right to counsel where a defendant: has made explicit statements such as, "I'll represent myself," after being directly asked multiple times if he wanted to represent himself and being explained the difference between standby counsel and court-appointed counsel, *see State v. Bannerman*, 276 N.C. App. 205, 207–09 (2021); has refused to answer any of the questions presented to him by the trial court, *see Jones*, 292 N.C. App. at 498; has executed multiple waivers of counsel and no contra evidence existed that the initial waiver was insufficient, *see State v. Harper*, 285 N.C. App. 507, 517 (2022); and where the trial court has thoroughly explained to the defendant the consequences of a potential conviction of the crime he is charged with. *See State v. Moore*, 290 N.C. App. 610, 633 (2023); *see also State v. Seraphem*, 90 N.C. App. 368, 371 (1988) (holding the defendant intelligently waived counsel after the "trial judge explained to the defendant the maximum penalties for the charges against her and emphasized the seriousness of her plight").

We find *Moore* to be particularly helpful in highlighting what is required by a trial court before finding a defendant has waived his right to counsel. In *Moore*, we concluded the defendant, charged with first degree murder, waived his right to counsel where the trial court had conducted two separate colloquies into the defendant's waiver of counsel. *See Moore,* 290 N.C. App. at 632–33. The record revealed "[the d]efendant executed a written waiver of court-appointed attorney . . . after the trial court had conducted a colloquy[,]" and the "trial court conducted a similar colloquy when [the d]efendant sought to remove [another attorney] as his

counsel during trial." *Id.* at 632. The trial court directly explained to the defendant that if the defendant fired his court-appointed counsel during the middle of trial, "you're going to be forfeiting your right to have an attorney[,]" and the defendant responded, "[t]hat's fine." *Id.* at 633. The trial court explained to the defendant that he "would not have the right to another appointed attorney, and [the d]efendant would have to hire his own attorney or represent himself[, and the d]efendant stated he understood." *Id.* at 633.

On appeal, after reviewing the record, we held the defendant waived his right to counsel "knowingly, intelligently, and voluntarily," and in making this holding explained:

> At each colloquy, the trial court advised and counseled [the d]efendant about his right to an attorney, including his right to appointed counsel. The trial court counseled [the d]efendant on the complexity of handling his own jury trial and the fact the judge would neither be able to offer legal advice nor excuse non-compliance with any rules of evidence or procedure.
>
> The trial court addressed the seriousness of the first-degree murder charge. The trial court advised a conviction by the jury of first-degree murder carried a life sentence without the possibility of parole. The trial court further told [the d]efendant that no other appointed counsel would be able or willing to immediately step into the middle of an ongoing trial. After being fully advised, [the d]efendant proceeded to fire [his counsel] and was left to acquire his own counsel or proceed *pro se.*

*Id.* at 633.

Alternatively, we have held a defendant does not waive his right to counsel

where the defendant "repeatedly requested new counsel" even where he has signed a waiver of court-appointed counsel. *See In re S.L.L.*, 167 N.C. App. 362, 364–65 (2004).

Our review of the Record in the instant case reveals that, during the hearing on Mr. Christopher's motion to withdraw as counsel for Defendant, the following sole colloquy occurred between the trial court and Defendant regarding potential waiver of counsel:

> THE COURT: All right. Well, [Mr. Christopher's] motion to withdraw is allowed. The question now, sir, is whether or not we've come to a point where you have, in essence, waived your right -- well, you said you have a waiver?
>
> THE DEFENDANT: Yeah, that's what I -- I filed it just to get him off my case.
>
> THE COURT: We're somewhat coming to a point where we need to consider if you have effectively waived your right to the assistance of court-appointed counsel anyway and that you need to represent yourself or if we need to appoint standby counsel to assist you with this case. What are you asking to do, just so I have an understanding of that first?
>
> THE DEFENDANT: Your Honor, I've been held almost 50 months, and it doesn't make sense. From my third attorney, Cindy Bradley, sat on my case 18 months, provided no assistance, had no communication with her. She didn't even request the motion for discovery. She never requested one. She filed a motion to withdraw and got my charges wrong, stood here and stated that she was working on my case the whole time. If you was working on my case the whole time, how you getting my charges wrong?
>
> THE COURT: All right. Thank you.
>
> . . . .

- 12 -

THE COURT: And you do understand that you have had the right to have attorneys represent you, but it seems as though you've five times not been satisfied with counsel that's been provided so you've fired -- you just mentioned you fired Ms. Lumsden; you wanted Mr. Christopher gone; you were dissatisfied with Ms. Bradley, and there were two other attorneys before that[.]

THE DEFENDANT: Theodore Dardess -- Theodore Dardess, he withdrew immediately, and the second one was Ryan Willis, who stated he had a overloaded caseload or something so he wouldn't be able to take my case.

THE COURT: All right. And then there were the next three that -- where there have been complications at least one time when it was set for trial. And you do understand that this case is headed for trial?

THE DEFENDANT: Oh, yes.

. . . .

THE COURT: All right, sir, *I'm going to find that you have -- that you have waived your right to the assistance of counsel.* I will not assign a sixth attorney to represent you on these matters. The case -- the case can still move forward to trial. I will assign standby counsel. Mr. Christopher, do you have any -- anything that you would add as it relates to being available as standby counsel in the event that [Defendant] would need assistance?

THE DEFENDANT: Appoint anybody but him. I'll take him. (Indicating to the bailiff.) Anybody but Mr. Christopher.

Unlike the defendant in *Moore*, where the trial court directly explained to the defendant that he would be forfeiting his right to counsel if he fired his attorney, Defendant was not told by the trial court that he would be waiving his right to counsel

- 13 -

if he fired Mr. Christopher. *See Moore,* 290 N.C. App. at 633. After the trial court granted Mr. Christopher's motion to withdraw, the trial court *told* Defendant, "I'm going to find that you have -- that you have waived your right to the assistance of counsel[,]" but that it would appoint standby counsel.

There is nothing in the colloquy with the trial court to indicate Defendant "expressly and voluntarily" waived his right to counsel, s*ee In re S.L.L.*, 167 N.C. App. at 364, nor did Defendant "clearly and unequivocally" express his decision to proceed pro se. *See Watlington*, 216 N.C. App. at 393; *see also State v. Blakeney*, 245 N.C. App. 452, 460 (2016) ("[O]ur own review of the transcript fails to reveal any evidence that [the] defendant indicated, much less 'clearly and unequivocally' requested, that he be permitted to proceed *pro se*."). The trial court never asked if Defendant wished to represent himself, *cf. Moore*, 290 N.C. App. at 633, nor did Defendant make an explicit statement that he would represent himself. *See Bannerman*, 276 N.C. App. at 207–09.

The trial court further failed to determine whether Defendant "underst[ood] and appreciat[ed] the consequences of the decision[,]" as it did not inquire whether Defendant understood the difference between a court-appointed counsel versus standby counsel, such that Defendant was now proceeding pro se. Although Defendant wrote in a previous letter that he "would like to go pro se and have court[-]appointed counsel on stand-by[,]" the trial court did not make a determination that Defendant understood the consequences of that decision as required by N.C.G.S. §

- 14 -

15A-1242. *See id.* at 207–09; *see also* N.C.G.S. § 15A-1242. In fact, Defendant

unequivocally stated, "[a]ppoint anybody but [Mr. Christopher]."

The trial court also failed to thoroughly advise Defendant of the consequences

of a conviction, as required, advising Defendant only as to the minimum punishment:

> THE COURT: Okay. And so, sir, for each of the statutory
> sex offenses, you recognize that there is the possibility of
> life -- not life, but 25 years minimum for each of those six?
>
> THE DEFENDANT: I'm very well aware, Your Honor.

*See Moore*, 290 N.C. App. at 633 (upholding a waiver where the trial court addressed

the seriousness of the charge and advised the defendant that a conviction carried a

maximum of a life sentence without the possibility of parole); *see also Seraphem*, 90

N.C. App. at 371 (upholding a waiver where the trial court explained to the defendant

the "maximum penalties for the charges against her and emphasized the seriousness

of her plight")*; Lindsey*, 271 N.C. App. at 127 (requiring a trial court to "specifically

advise a defendant of the possible maximum punishment, of the range of permissible

punishments, and of the consequences of representing himself").

In *State v. Gentry*, this Court explained that "a mistake in the number of

months which a trial judge employs during a colloquy with a defendant contemplating

the assertion of his right to proceed *pro se*" does not constitute a *per se* violation of

N.C.G.S. § 15A–1242 unless "there was a reasonable likelihood that the defendant

might have made a different decision with respect to the issue of self-representation

had he or she been more accurately informed about the range of permissible

punishment." 227 N.C. App. 583, 599–600 (2013) (internal quotation marks omitted). We did so, however, only *after* concluding "[t]he record . . . clearly reflect[ed] that the trial court made a substantially proper inquiry into the extent to which [the d]efendant's waiver of counsel was knowing and voluntary." *See id.* at 598. In *Gentry*, "[t]he only component of the trial court's discussion with [the d]efendant [with] which [the d]efendant [took] issue [was] the information concerning 'the range of permissible punishments' that the trial court provided." *Id.* at 598. We reviewed the trial court's failure to properly state the maximum number of months to see whether the error prejudiced the defendant in his "otherwise knowing and voluntary waiver of counsel." *See id.* at 600.

Here, however, this Court must consider whether Defendant "has been clearly advised of his rights to the assistance of counsel, including his right to the assignment of appointed counsel when he is so entitled[,]" "understands and appreciates the consequences of the decision[,]" and "comprehends the nature of the charges and proceedings[,]" such that we are not looking at whether this one failure to properly state "the range of permissible punishments" *prejudiced* Defendant, but whether in the context of the requirements stated above, Defendant knowingly and voluntarily waived counsel. *See Jones*, 292 N.C. App. at 498.

Further, although Defendant captioned his request to remove Mr. Christopher and others as "Waiver of Counsel" and wrote that he wished to represent himself, he expressed that he requested this because he felt it was "time to move on with a new

attorney who is willing to help." Such evidence, expressing he wished to move on to a new attorney and requesting someone else be appointed to him, is "contra" to a clear waiver of counsel. *See Harper*, 285 N.C. App. at 517 (holding the defendant's multiple written waivers were enough to establish he had waived his right of counsel where "no evidence *contra* exist[ed]"). Additionally, Defendant's handwritten document filed on 16 May 2022—the sole time he wrote "[a]t this time, I would like to go *pro se* and have court appointed counsel on stand-by[,]" after lamenting he "feel[s] it's time to move on with a new attorney who is willing to help"—was not written in the presence of the trial court for the trial court to determine if Defendant, "at the time of the waiver . . . acted with full awareness of his rights and of the consequences of the waiver." Additionally, during the colloquy with the trial court, Defendant never asked to proceed pro se nor did Defendant request standby counsel. Thus, this waiver cannot be deemed effective. *See* N.C.G.S. § 7A-457(a).

Like in *In re S.L.L.*, the trial court here erred in finding Defendant waived his right of counsel where, although he once "wrote he would like to go pro se," he "repeatedly requested new counsel," and even stated in that very handwritten note that he felt like it was "time to move on with a new attorney who is willing to help." *See In re S.L.L*, 167 N.C. App. at 365. A fulsome review of the Record overcomes the presumption that a written wavier of counsel by Defendant was done "knowing[ly], intelligent[ly], and voluntar[ily]." *See Jenkins*, 273 N.C. App. at 151; *see also Harper*, 285 N.C. App. at 517; N.C.G.S. § 7A-457(a).

- 17 -

Accordingly, we conclude Defendant did not "clearly and unequivocally" waive his right to counsel, *see Watlington*, 216 N.C. App. at 393, the trial court failed to determine whether Defendant "underst[ood] and appreciat[ed] the consequences of the decision[,]" and thus the trial court erred in entering an order stating that Defendant waived this right. *See Jones*, 292 N.C. App. at 498; *see also* N.C.G.S. § 15A-1242.

## B. Forfeiture of Counsel

Defendant next argues that, even though the trial court spoke in terms of waiver, he also did not forfeit his right to counsel. Defendant contends "the trial court made several references to his having been represented by five different attorneys, the implication being that [Defendant] was unreasonable in his dissatisfaction and should therefore be deemed to have forfeit[ed] his right to counsel." Defendant argues "there was no showing, nor any finding by the trial court, that [his] requests for new counsel arose from anything other than real efforts to prepare for a trial on the serious charges pending against him." We agree.

This Court has explained that "[t]he second circumstance under which a criminal defendant may no longer have the right to be represented by counsel occurs when a defendant engages in such serious misconduct that he forfeits his constitutional right to counsel." *Blakeney*, 245 N.C. App. at 460; *see also State v. Simpkins*, 373 N.C. 530, 535 (2020) ("[I]n situations evincing egregious misconduct by a defendant, a defendant may forfeit the right to counsel."). In *Simpkins*, our

Supreme Court explained:

> [I]n rare circumstances a defendant's actions frustrate the purpose of the right to counsel itself and prevent the trial court from moving the case forward. In such circumstances, a defendant may be deemed to have forfeited the right to counsel because, by his or her own actions, the defendant has totally frustrated that right. If one purpose of the right to counsel is to justify reliance on the outcome of the proceeding, then totally frustrating the ability of the trial court to reach an outcome thwarts the purpose of the right to counsel.

*Id.* at 536 (internal citations and quotations marks omitted). We have previously explained that, although there is no "bright-line definition of the degree of misconduct that would justify forfeiture[,]" the following conduct is usually a cause for forfeiture of the right to counsel:

> (1) flagrant or extended delaying tactics, such as repeatedly firing a series of attorneys; (2) offensive or abusive behavior, such as threatening counsel, cursing, spitting, or disrupting proceedings in court; or (3) refusal to acknowledge the trial court's jurisdiction or participate in the judicial process, or insistence on nonsensical and nonexistent legal "rights."

*Blakeney*, 245 N.C. App. at 461–62.

"[E]ven if a defendant's conduct is highly frustrating, forfeiture is not constitutional where any difficulties or delays are not so egregious that they frustrated the purposes of the right to counsel itself." *State v. Atwell*, 383 N.C. 437, 449 (2022) (citation omitted) (cleaned up). Additionally, where a trial court makes "no factual findings about the circumstances which led to the withdrawal," there is

"no inference that [the] defendant was attempting to delay h[is] case." *Id.* at 451.

Here, Defendant did not threaten counsel or disrupt any court proceedings, nor did he refuse to acknowledge the trial court's jurisdiction. Defendant participated in the judicial process and did not insist on nonsensical or nonexistent legal rights. *See Blakeney*, 245 N.C. App. at 461–62. The only potential misconduct is as to whether Defendant used flagrant or extended delay tactics by "repeatedly firing a series of attorneys." Thus, we now look to our Courts' previous cases regarding defendants firing their attorneys, as a basis for forfeiting their right to counsel.

Our Supreme Court has previously held a defendant does not forfeit his right to counsel where a defendant fires court-appointed counsel "due to differences related to the preparation of [the] defendant's defense rather than [the] defendant's refusal to participate in preparing a defense." *State v. Harvin*, 382 N.C. 566, 590 (2022) (cleaned up). A defendant likewise does not forfeit his right to counsel where he fires his counsel for failing to pursue a non-frivolous jurisdictional issue that the defendant desired. *See Atwell*, 383 N.C. at 451–52.

Alternatively, we have held a defendant forfeits his right to counsel when he "refuse[s] to cooperate" with his counsel and "assault[s] him," *see State v. Montgomery*, 138 N.C. App. 521, 525 (2000), and where he "insist[s] that his attorneys pursue defenses that [are] barred by ethical rules" and "refus[es] to cooperate when they [do] not comply with his requests." *See State v. Smith*, 292 N.C. App. 656, 661 (2024).

In the present case, Defendant's first two court-appointed counsel withdrew immediately for conflicts of interest, one having represented the mother of one of Defendant's victim's before, and one having left private practice to work at the Attorney General's office. Defendant's third court-appointed counsel withdrew as Defendant's counsel for "personal reasons."[1] Defendant's fourth court-appointed counsel was Ms. Lumsden, who Defendant claimed "went missing [in] September 2021," returned 29 March 2022, and "has been missing since." Defendant lamented he was dissatisfied with Ms. Lumsden's representation because she had refused to meet his objectives, lied about withdrawing from his case after his request for her to do so, and lied to him about her being on vacation.[2] Defendant's fifth and final court-appointed counsel was Mr. Christopher, whom Defendant requested to fire in August 2022 because Mr. Christopher "ha[d] yet to come and see [him]." Seven months later, Mr. Christoper moved to withdraw, claiming "Defendant refuse[d] to discuss his case with this attorney or assist this attorney in any way," although Mr. Christopher provided only one date that Defendant refused to meet with him, which was 21 April 2023, three days before Mr. Christopher moved to withdraw.

We can ascertain from the Record: Defendant's first two attorneys withdrew

---

[1] There is no hearing transcript in the Record, and thus we are left only with the knowledge that the third court-appointed counsel, Ms. Popkin-Bradley, withdrew for "personal reasons."

[2] There is no motion from Ms. Lumsden to withdraw nor a hearing transcript in the Record; there is only an order from the trial court granting the motion, and thus, we are unable to ascertain the reasons for Ms. Lumsden's withdrawal.

for reasons outside of Defendant's conduct; Defendant fired his third attorney for reasons not stated in the Record, only that she withdrew for "personal reasons," and thus we cannot say this was done as a delay tactic, *see Atwell*, 383 N.C. at 451; Defendant fired his fourth attorney over disagreements on objectives of the case, which is not a delay tactic, "rather than [D]efendant's refusal to participate in preparing a defense," *see Harvin*, 382 N.C. at 590; and the trial court did not make any findings regarding the withdrawal of Defendant's fourth attorney. Nothing in the Record indicates Defendant's objectives were unethical. *See Smith*, 292 N.C. App. at 661. Defendant fired his fifth attorney after claiming the attorney "ha[d] yet to come and see [him]." The Record indicates that Defendant's fifth attorney described Defendant as "refus[ing] to discuss this case with" him after Defendant had already filed a pro se motion to have him fired seven months before.

Unlike the defendant in *Montgomery*, Defendant never assaulted his attorneys. *See Montgomery*, 138 N.C. App. at 525. Defendant only refused to discuss the case with his last attorney after indicating he wished to fire that attorney for previously failing to come to see him regarding his case. *Cf. id.* at 525.

The only negative Record evidence of Defendant's actions is found in the trial transcript, before the trial court's colloquy with Defendant, where the State lamented:

> This defendant has literally, every single time something
> starts to get towards a trial, has done some kind of thing
> with his attorney to get them to withdraw. We were set for

> trial with Ms. Bradley and he did the same kind of stuff
> and she was able t[o] withdraw the week before trial.
>
> . . . .
>
> The State has every single time tried to get this to trial,
> and so he has continued to behave in ways that are making
> that impossible. The State is ready to proceed on May 30th.
> This has been set for several months, and I would ask that
> we either appoint somebody, potentially Mr. Christopher,
> as standby since he is aware of this case. Every single
> lawyer that [Defendant] has had, I have given discovery,
> full discovery to. I actually recopied discovery for Mr.
> Christopher so I know he had all of it, so I would submit
> that that would make the most sense, to do standby counsel
> with somebody who is aware of the case and proceed.

The trial court, however, did not make any findings regarding Defendant's alleged actions by the State, and thus, we cannot make any inference that Defendant's actions were an attempt to delay the trial. *See Atwell*, 383 N.C. at 451.

Based on the Record evidence, we cannot say Defendant's firing of his attorneys was "egregious misconduct" or a flagrant delaying tactic. *See Harvin*, 382 N.C. at 590; *see also Smith*, 292 N.C. App. at 661; *Atwell*, 383 N.C. at 451; *Blakeney*, 245 N.C. App. at 461–62; *Simpkins*, 373 N.C. at 535. Accordingly, the trial court erred in concluding Defendant forfeited his right to counsel.

## C. Hybrid: Waiver of Counsel by Conduct with Warning

We also consider the State's argument that, in addition to voluntary waiver and forfeiture, Defendant exhibited a "hybrid" form of waiving one's right to counsel, waiver by conduct. We conclude he did not.

In *Blakeney*, this Court provided:

> Finally, there is a hybrid situation (waiver by conduct) that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel. Recognizing the difference between forfeiture and waiver by conduct is important. First, because of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct. On the other hand, a waiver by conduct could be based on conduct less severe than that sufficient to warrant a forfeiture. This makes sense since *a waiver by conduct requires that a defendant be warned about the consequences of his conduct*, including the risks of proceeding *pro se*. A defendant who engages in dilatory conduct having been warned that such conduct will be treated as a request to proceed *pro se* cannot complain that a court is forfeiting his right to counsel.

*Blakeney*, 245 N.C. App. at 464–65, (citation and internal quotation marks omitted) (cleaned up) (emphasis added). In *Blakeney*, the defendant was not given a warning that, should he continue in his conduct, he would be required to proceed *pro se*. *See id.* at 464. In holding that the defendant did not waive his right to counsel by conduct, this Court explained: "[W]e find it very significant that [the] defendant was not warned or informed that if he chose to discharge his counsel but was unable to hire another attorney, he would then be forced to proceed *pro se*. Nor was [the] defendant warned of the consequences of such a decision." *Id.* at 464.

Here, like the defendant in *Blakeney*, Defendant received no warning that he was "engag[ing] in dilatory tactics" of any sort; instead, in the colloquy, the trial court

stated: "All right. Well, [Mr. Christopher's] motion to withdraw is allowed. The question now, sir, is whether or not we've come to a point where you have, in essence, waived your right[.]" *See id.* at 464. There is nothing in the Record to indicate the trial court ever warned Defendant that any of his conduct was dilatory. *See id.* at 464. Because waiver by conduct "requires that a defendant be warned about the consequences of his conduct," and there is no Record here that the trial court provided Defendant with any warning regarding his conduct, nor does the State argue there was any warning, we hold Defendant did not waive his right to counsel by conduct. *See id.* at 465.

Because we conclude Defendant did not knowingly and voluntarily waive his right to counsel, forfeit his right to counsel by engaging in egregious misconduct, nor waive his right to counsel by engaging in dilatory conduct after receiving a warning, we hold the trial court erred in concluding Defendant waived his right to counsel.

## V. <u>Conclusion</u>

Upon our de novo review, *see Jenkins*, 273 N.C. App. at 150, we conclude the trial court erred in concluding Defendant voluntarily waived his right to counsel, where Defendant requested new counsel and did not "clearly and unequivocally" express his decision to proceed pro se, and the trial court did not determine Defendant understood the consequences of proceeding *pro se*. The trial court likewise erred in concluding Defendant forfeited his right to counsel where the Record lacks evidence that Defendant fired multiple attorneys to delay his trial, and thus Defendant did not

commit "egregious misconduct," nor did Defendant waive his right to counsel by engaging in dilatory conduct after receiving a warning. We therefore vacate and remand for a new trial. *See State v. Sorrow*, 213 N.C. App. 571, 579 (2011) (vacating and remanding where the trial court erred in concluding a defendant waived his right to counsel).

VACATED AND REMANDED.

Judge ZACHARY concurs.

Judge TYSON dissents in separate opinion.

TYSON, Judge, dissenting.

The majority's opinion erroneously concludes Defendant did not voluntarily waive and/or forfeit his right to counsel. Defendant's actions also present a "hybrid" waiver/forfeiture situation from *State v. Blakeney*, 245 N.C. App. 452, 464-65, 782 S.E.2d 88, 96 (2016). There is no prejudice shown and no error in the judgment. I respectfully dissent.

## I. Background

Defendant was indicted for six counts of statutory sex offense with a child and ten counts of indecent liberties with a child on 8 April 2019. The trial court initially appointed the public defender's office to represent Defendant. However, the public defender's office withdrew because of its prior representation of one of the victim's mothers. The trial court next appointed attorney James M. Wilson to represent Defendant. Wilson left private practice to work for the North Carolina Department of Justice, and he was allowed to withdraw.

The trial court next appointed attorney Cindy Popkin-Bradley on 20 November 2019. Popkin-Bradley moved to withdraw due to "personal reasons" the week before the matter was set for trial. The trial court allowed her motion and then appointed attorney Margaret Lumsden to represent Defendant in May 2021.

Defendant filed a handwritten motion alleging he was dissatisfied with

Lumsden's representation, and he requested the trial court to dismiss her from the case. Defendant alleged Lumsden had refused to meet his objectives, had lied to him about withdrawing from the case, and had lied about going on vacation.

The trial court did not either grant or deny Defendant's motion, however, it entered an order advising Defendant "the [trial] court must conduct an in-person colloquy in open court before the [trial c]ourt will grant [Defendant's] request." The trial court further advised Defendant, if he wanted this hearing to be held, Defendant was to "request that [his] attorney schedule a hearing."

Defendant field a handwritten motion to remove Lumsden on 16 May 2022 alleging she "went missing September 2021," returned 29 March 2022, and "has been missing since." Defendant asserted: "At this time, I would like to go *pro se* and have court appointed counsel on stand-by." The trial court allowed Defendant's motion for Lumsden to withdraw, but it ordered outside counsel to be appointed instead of allowing Defendant to proceed *pro se*. The trial court appointed Charles Christopher, Jr. as Defendant's fifth appointed counsel.

Defendant wrote another handwritten letter to the trial court requesting for Christopher to be replaced on 18 August 2022. Defendant also filed a *pro se* document with the Court entitled "Waiver of Counsel." Attorney Christopher moved to withdraw as Defendant's counsel on 24 April 2023, alleging, "Defendant refuses to discuss his case with this attorney or assist this attorney in any way." Christopher also stated Defendant had refused to meet with him on 21 April 2023.

Three weeks before the matter was set for trial, Christopher's motion was heard on 4 May 2023. In open court, the trial court heard from both Defendant and Christopher. The State opposed Defendant's motion and alleged Defendant had previously filed speedy trial motions. The State further asserted every time the State was prepared to bring the case to trial, Defendant acted in a manner to cause his attorney to withdraw. The State also asserted the victims had experienced emotional troubles from being prepared for trial multiple times, only to then have the trial again delayed.

The trial court and Defendant entered into the following colloquy:

> THE COURT: We're somewhat coming to a point where we need to consider if you have effectively waived your right to the assistance of court-appointed counsel anyway and that you need to represent yourself or if we need to appoint standby counsel to assist you with this case. What are you asking to do, just so I have an understanding of that first?
>
> DEFENDANT: Your Honor, I've been held almost 50 months, and it doesn't make sense. From my third attorney, Cindy Bradley, sat on my case 18 months, provided no assistance, had no communication with her. She didn't even request the motion for discovery. She never requested one. She filed a motion to withdraw and got my charges wrong, stood here and stated that she was working on my case the whole time. If you was [sic] working on my case the whole time, how [are] you getting my charges wrong?
>
> . . .
>
> THE COURT: Well, I have some of the documents. I'm waiting for additional files to come up. All right, sir, I am going to find that you have waived – well, actually, let me

ask a couple more questions. It seems as though you – do you have any difficulty being able to hear or understand?

DEFENDANT: No, Your Honor.

THE COURT: It seems like you're well versed in – well, I know you're able to read and write because you've clearly been reading and you've written the Court, so that's true, correct?

DEFENDANT: Yes, it is. Also, Your Honor, I would like to state last year on June 3rd, upon firing my fourth attorney, Ms. Margaret Lumsden, the judge that presided over my case that day stated to me that she wanted to see my motion for discovery and granted me a court date for July 5th, the following month, which is the same day Mr. Christopher was appointed to me.

THE COURT: All right.

. . .

DEFENDANT: They refused to bring me in.

THE COURT: So you're able to hear and understand me and you understand the right that you do have the ability to plea not guilty, obviously, correct?

DEFENDANT: Yes.

THE COURT: I know you're in custody, but have you been using – has anybody allowed or have you used any alcohol or any drugs, narcotics or anything that would intoxicate you?

DEFENDANT: No, Your Honor.

THE COURT: So nothing in the past 50 months?

DEFENDANT: No, Your Honor.

THE COURT: And you do understand that you have had the right to have attorneys represent you, but it seems as

though you've five times not been satisfied with counsel that's been provided so you've fired – you just mentioned you fired Ms. Lumsden; you wanted Mr. Christopher gone; you were dissatisfied with Ms. Bradley, and there were two other attorneys before that that you –

DEFENDANT: Theodore Dardess – Theodore Dardess, he withdrew immediately, and the second one was Ryan Willis, who stated he had a overloaded caseload or something so he wouldn't be able to take my case.

THE COURT: All right. And then there were the next three that – where there have been complications at least one time when it was set for trial. And you do understand that this case is headed for trial?

DEFENDANT: Oh, yes.

THE COURT: You understand that – what's the minimum for a statutory – I'm trying to recall –

[THE STATE]: They are all – all six of those are the 25-year minimums.

THE COURT: Okay. And so, sir, for each of the statutory sex offenses, you recognize that there is the possibility of life – not life, but 25 years minimum for each of those six?

DEFENDANT: I'm very well aware, Your Honor.

THE COURT: Are there any – are you aware of each – the elements in each part of the offenses against you?

DEFENDANT: Yes, I am.

THE COURT: All right, sir, I'm going to find that you have – that you have waived your right to the assistance of counsel. I will not assign a sixth attorney to represent you on these matters. The case – the case can still move forward to trial. I will assign standby counsel. Mr. Christopher, do you have any – anything that you would add as it relates to being available as standby counsel in

the event that Mr. McGirt would need assistance?

DEFENDANT: Appoint anybody but him. I'll take him. (Indicating to the bailiff.) Anybody but Mr. Christopher.

THE COURT: All right. I'll ask that the Public Defender's Office assign someone to serve as standby counsel in your matter. It is still continuing for trial. Yes, I will order that the Public Defender's Office still assign someone as standby counsel in this matter.

## II.    Waiver of Counsel

Both the Constitution of the United States and the North Carolina Constitution recognize a criminal defendant's right to the assistance of counsel. U.S. Const. amend. VI.; N.C. Const. Art. I, §§ 19, 23; *see also Powell v. Alabama*, 287 U.S. 45, 66, 77 L.Ed. 158, 169 (1932); *State v. McFadden*, 292 N.C. 609, 611, 234 S.E.2d 742, 744 (1977). Criminal defendants also have the absolute right to waive or forfeit counsel, represent themselves, and handle their case without the assistance of counsel. *State v. Mems*, 281 N.C. 658, 670-71, 190 S.E.2d 164, 172 (1972).

The majority's opinion incorrectly concludes Defendant did not waive or forfeit his right to counsel. Before a defendant is allowed to waive the right to counsel, a trial court must conduct a statutorily-required colloquy to determine that "constitutional and statutory safeguards are satisfied." *State v. Moore*, 362 N.C. 319, 322, 661 S.E.2d 722, 724 (2008) (citation omitted). Courts "must determine whether the defendant knowingly, intelligently and voluntarily waives the right to in-court representation by counsel." *Id.* (citation omitted).

N.C. Gen. Stat. § 15A-1242 (2023) governs the procedure to be used for a defendant to waive counsel. Courts may only enter an order to allow a defendant to waive their right to counsel after the court is satisfied and the record shows the movant: (1) has been clearly advised of his rights to the assistance of counsel, including his right to the assignment of appointed counsel when he is so entitled; (2) understands and appreciates the consequences of the decision; and, (3) comprehends the nature of the charges and proceedings and the range of permissible punishments. *Id.* The record clearly shows compliance with all three statutory factors.

Our Supreme Court has held a "trial court must obtain a written waiver of the right to counsel." *State v. Thomas*, 3331 N.C. 671, 675, 417 S.E.2d 473, 476 (1992) (citation omitted). The record does not indicate whether Defendant executed a written waiver of court-appointed attorney after the trial court had conducted a colloquy into Defendant's present mental state. The trial court questioned Defendant about whether he was under the influence of any drugs or intoxicants, whether he understood the charges and its possible punishments, his level of education, his right to appointed or retained counsel, his right to represent himself, and Defendant's obligations and responsibilities if he decided to represent himself.

Written waivers of counsel, certified by the trial court, create a rebuttable presumption the waiver was executed knowingly, intelligently, and voluntarily pursuant to N.C. Gen. Stat. § 15A-1242. *See State v. Kinlock*, 152 N.C. App. 84, 89, 566 S.E.2d 738, 741 (2002) (citation omitted), *aff'd per curiam*, 357 N.C. 48, 577

S.E.2d 620 (2003).

The record does not include a signed waiver and certification by the superior court judge that a proper inquiry and disclosure was made in compliance with the statute. N.C. Gen. Stat. § 15A-1242 (2023). There is no mention of a signed waiver in the transcript of the hearing wherein the trial court conducted the statutory colloquy.

This absence in the record does not invalidate Defendant's waiver. *See State v. Heatwole*, 344 N.C. 1, 18, 473 S.E.2d 310, 318 (1996) (holding *inter alia* the lack of a written waiver neither alters the conclusion that the waiver was knowing and voluntary, nor invalidates the defendant's waiver of counsel); *State v. Fulp*, 355 N.C. 171, 176, 558 S.E.2d 156, 159 (2002) (affirming *Heatwole* holding "that a waiver was not invalid simply because there was no written record of the waiver" (citation and internal quotation marks omitted)).

The majority's opinion incorrectly concludes the trial court failed to ascertain whether Defendant had "expressly and voluntarily" waived his right to counsel. It also incorrectly concludes the trial court failed: to determine whether Defendant had "clearly and unequivocally" expressed his decision to proceed *pro se*, to determine whether Defendant "underst[ood] and appreciate[ed] the consequences of the decision[,]" and to advise Defendant of the consequences of a conviction to the charges.

The majority's opinion holds the trial court did not ascertain whether

Defendant had "expressly and voluntarily" waived his right to counsel. The record shows Defendant had filed two separate motions entitled "Waiver of Counsel" with the trial court on 16 May 2022 and again on 4 April 2023. The majority's opinion further holds Defendant did not "clearly and unequivocally" express his decision to proceed *pro se*. This is also error. Defendant clearly and unambiguously stated in his 16 May 2022 motion: "At this time I would like to go Pro Se and have Court Appointed Counsel on stand-by." During the colloquy, Defendant again requested stand by counsel, which the trial court clearly allowed.

The majority's opinion also asserts Defendant was not advised of the consequences of being convicted of the crimes charged because Defendant was only advised of the minimum punishment for each of the charges. The majority's opinion uses a string citation with accompanying parentheticals of this Court's prior opinions in *State v. Moore*, 290 N.C. 610, 893 S.E.2d 231, *appeal dismissed*, 385 N.C. 624, 895 S.E.2d 402 (2023), *State v. Seraphem*, 90 N.C. App. 368, 368 S.E.2d 643 (1988), and *State v. Lindsey*, 271 N.C. App. 118, 843 S.E.2d 322 (2020). All of these cases assert the trial court's responsibility to inform a criminal defendant seeking to proceed *pro se* with the maximum sentence.

However, this case is more analogous to "calculation errors" in informing defendants of the maximum sentence they face if convicted. A "calculation error" in the maximum sentence a criminal defendant is facing violates N.C. Gen. Stat. § 15A-1242, only "if there was a reasonable likelihood that the defendant might have made

a different decision with respect to the issue of self-representation had he or she been more accurately informed about the 'range of permissible punishments.'" *State v. Gentry*, 227 N.C. App. 583, 600, 743 S.E.2d 235, 246 (2013) (internal quotation marks omitted). *See State v. Fenner*, 290 N.C. App. 553, 892 S.E.2d 111 (2023) (unpublished). Defendant has failed to make that required showing here.

In *Gentry*, the trial court had incorrectly informed the defendant he could be sentenced to a maximum sentence of 740 months when he actually faced a 912 months active sentence. *Gentry*, 227 N.C. App. at 599, 743 S.E.2d at 246. This Court found no prejudicial error had occurred and held the defendant:

> waived his right to counsel knowingly and voluntarily as the result of a trial court's failure to comply with N.C. Gen. Stat. § 15A-1242, it does not have such an effect in this instance given that either term of imprisonment mentioned in the trial court's discussions with [the defendant] was, given [the defendant's] age, *tantamount to a life sentence.*

*Id.* at 600, 743 S.E.2d at 246-47 (emphasis supplied).

Here, Defendant was born in 1970 and was charged with six counts of class B1 felonies, which each charge carries a minimum of 300 months and a maximum of 420 months. During the colloquy the State asserted, "[t]hey are all -- all six of those are the 25-year minimums." The trial court asked: "Okay. And so, sir, for each of the statutory sex offenses, you recognize that there is the possibility of life -- not life, but 25 years minimum for each of those six?" Defendant responded: "I'm very well aware, Your Honor."

Defendant was ultimately tried and convicted of four of the six counts of statutory sex offense. A single conviction would cause Defendant to be over seventy-five years old upon completion of a single sentence. Defendant was sentenced to a minimum of 100 years and a maximum of 140 years for only his B1 convictions. Presuming he only serves the minimum sentences imposed, he would be over 150 years old upon completion of his B1 convictions' sentences. Defendant was clearly informed and acknowledged these charges each carry a minimum sentence of twenty-five years, or 300 months. These sentences are "tantamount to a life sentence" given the Defendant's advanced age upon expiration of his sentences. *Id.* at 600, 743 S.E.2d at 246-47. The record does not contain evidence tending to show Defendant was prejudiced or would have made a different choice had he been further told he could be sentenced to a maximum of 35 years imprisonment for each charge instead of the minimum 25 years. *Id.*

The majority's opinion seeks to differentiate this analysis by boldly stating, without citation to any authority, "[S]uch that we are not looking at whether this one failure to properly state the 'range of permissible punishments' *prejudiced* Defendant, but whether in the context of the requirements stated above, Defendant knowingly and voluntarily waived counsel." This statement is an incorrect application of both our General Statutes and our case law. The case cited prior to the statement, *State v. Jones*, 292 N.C. App. 493, 498, 898 S.E.2d 784, 788 (2024) (citing *State v. Thomas*, 331 N.C. 671, 675, 417 S.E.2d 473, 476 (1992)), includes the correct requirement from

N.C. Gen. Stat. § 15A-1242 that a defendant "comprehends the nature of the charges and proceedings and the range of permissible punishments." N.C. Gen. Stat. § 15A-1242 (2023).

### III. Hybrid Waiver and Forfeiture

*In State v. Moore*, this Court examined a mixture of waiver and forfeiture of counsel as described in *State v. Blakeney*. *Moore*, 290 N.C. App. at 628, 893 S.E.2d at 244. In *Blakeney*, this Court held:

> Finally, there is a hybrid situation (waiver by conduct) that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel. Recognizing the difference between forfeiture and waiver by conduct is important. First, because of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct. On the other hand, a waiver by conduct could be based on conduct less severe than that sufficient to warrant a forfeiture. This makes sense since a waiver by conduct <u>requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding *pro se*</u>. A defendant who engages in dilatory conduct having been warned that such conduct will be treated as a request to proceed *pro se* cannot complain that a court is forfeiting his right to counsel.

*Blakeney*, 245 N.C. App. at 464-65, 782 S.E.2d at 96 (citation, ellipses, and quotation marks omitted).

Defendant moved for a speedy trial and, as the trial dates approached, was dilatory and refused to engage with, or otherwise fired, his three appointed attorneys.

Defendant also filed two written notices to represent himself preceding the trial court's finding that he had waived his right to counsel and allowed him, *as he had requested in writing*, to proceed *pro se* with appointed standby counsel. *Id.* Defendant cannot now be heard to complain about the consequences directly resulting from his own requests and actions. *Id.*

## IV. Conclusion

Defendant has not shown prejudicial errors, and his convictions and sentences should lawfully remain undisturbed. He knowingly waived and/or forfeited his right to a further appointed sixth counsel and proceeded with standby counsel, as he had requested. *Moore*, 290 N.C. App. at 628, 893 S.E.2d at 244.

Defendant received a fair trial, free from prejudicial errors he preserved and argued. There is no reversible error in the jury's verdicts or in the judgments entered thereon.

The majority's opinion erroneously vacates Defendant's jury convictions and remands for a new trial. The sexual assault victims are unnecessary traumatized once again. I respectfully dissent.